730 So.2d 354 (1999)
Adrian WOODBURY, Appellant,
v.
STATE of Florida, Appellee.
No. 97-2332.
District Court of Appeal of Florida, Fifth District.
March 19, 1999.
Rehearing Denied April 23, 1999.
James B. Gibson, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Allison Leigh Morris, and Wesley Heidt, Assistant Attorneys General, Daytona Beach, for Appellee.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
We grant the Appellee's motion for rehearing en banc filed August 10, 1998. We withdraw our opinion issued July 24, 1998 and substitute the following opinion in its stead.
The family of Linda Anderson reported to the police that she had been missing for two or three days and described her vehicle as "a light blue 1991 Ford Tempo with a luggage rack and a temporary tag." Anderson's family was concerned because "she might have a drug problem ... and she'd lent her car out for drugs in the past." Officer Hewitt saw a car which met that *355 description and pulled it over. The driver indicated that Ms. Anderson had given her the authority to drive the vehicle. While the officer ran a check on the driver's license and the temporary tag, another officer conducted a canine search of the vehicle's exterior. The dog alerted to the presence of drugs at the "passenger side front door." The occupants of the vehicle, including Woodbury, were searched and cocaine was found on Woodbury. The trial judge denied the motion to suppress the cocaine and Woodbury appeals. We affirm.[1]
It was Woodbury's position at the suppression hearing and on appeal that stopping the vehicle without a "well-founded, reasonable suspicion of criminal activity" made the stop illegal, and that the subsequently found drugs, being the fruit of the poisonous tree, must be suppressed. He is wrong. His reliance on Sumlin v. State, 433 So.2d 1303 (Fla. 2d DCA 1983), is misplaced. Although Sumlin discussed the requirement of reasonable suspicion in the context of the commission of a crime, it did so because the BOLO in that case involved criminal activity. However, the police are also charged with the responsibility of looking for missing persons. Here, the police received a description of the vehicle belonging to a woman who was reported missing for two or three days. It was a reasonably good description. There is no question but that the vehicle "looked like" the vehicle described as belonging to Ms. Anderson. Indeed, it was that vehicle. The officer acted reasonably in stopping the vehicle to determine if it belonged to Ms. Anderson and, if it did, to see if she was safe. The officer further had reason to check the driver's license of the driver once she acknowledged that the car belonged to Ms. Anderson, and also to check the tag. The canine search was conducted within a reasonable time after the vehicle was stopped and the "dog alert" justified the search of the vehicle.
Woodbury raises an additional issue: "There being no evidence to support a reasonable suspicion that the Appellant, a passenger, was involved in any criminal activity, the State, below, failed to offer a sufficient basis for any detention and/or search of the defendant's person." This issue, however, was not raised or argued below and is waived for the purpose of appeal.[2]
AFFIRMED.
DAUKSCH, W. SHARP, GOSHORN, PETERSON, and THOMPSON, JJ., concur.
COBB, J., concurs and concurs specially, with opinion.
ANTOON, J., concurs and concurs specially, with opinion.
HARRIS, J., dissents with opinion in which GRIFFIN, C.J., concurs.
COBB, J., concurring specially.
The majority opinion is eminently correct in its analysis of the validity of the stop and the justification (via the dog alert) for search of the vehicle. The problem here was the absence of any showing that the vehicle itself was ever searched. Instead, the occupants who had just exited the vehicle were searched without any further dog alert as to their persons.[1]
*356 The core question here should have been whether a dog alert on a vehicle, in and of itself, authorizes the arrest and search of all of the occupants of that vehicle. The answer is no. See United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Rogers v. State, 586 So.2d 1148 (Fla. 2d DCA 1991). Unfortunately, the motion to suppress failed to clearly state this reason as a basis for suppression as required by Florida Rule of Criminal Procedure 3.190(h)(2). Nor did counsel ever present argument to the trial court that the search of Woodbury's person based only on the dog alert on the vehicle was improper. Woodbury's remedy at this point is a motion pursuant to Florida Rule of Criminal Procedure 3.850.
I therefore concur with the majority opinion.
ANTOON, J., concurring specially.
The majority and the dissent have labored to correctly set forth the law pertaining to investigatory stops, searches, and seizures. However, in my view, there is only one issue for determination in this case; that is, whether Mr. Woodbury raised and argued to the trial court the legality of the search of his person thus properly preserving his right to raise the issue upon appellate review. Because I conclude that this issue was not properly preserved, I concur with the majority's decision.
The issue of preservation arises primarily as the result of poor pleading on the part of Mr. Woodbury. His motion to suppress failed to comply with rule 3.190(h)(1), (2), Florida Rules of Criminal Procedure, which provides in relevant part:
Rule 3.190 Pretrial Motions
* * *
(h) Motion to Suppress Evidence in Unlawful Search.
(1) Grounds. A defendant aggrieved by an unlawful search and seizure may move to suppress anything so obtained for use as evidence because:
(A) the property was illegally seized without a warrant;
(B) the warrant is insufficient on its face;
(C) the property seized is not that described in the warrant;
(D) there was no probable cause for believing the existence of the grounds on which the warrant was issued; or
(E) the warrant was illegally executed.
(2) Contents of Motion. Every motion to suppress evidence shall clearly state the particular evidence sought to be suppressed, the reasons for suppression, and a general statement of the facts on which the motion is based.
Compliance with this rule affords both the state and the trial court the opportunity to prepare for argument on the issue of suppression. Furthermore, compliance with the rule eliminates any disagreement as to whether an issue has been preserved for appellate review.
Here, Mr. Woodbury's motion to suppress was a bare bones, one-page pleading that failed to clearly articulate the basis for suppression. In its entirety the motion stated:
MOTION TO SUPPRESS PHYSICAL EVIDENCE
The Defendant, ADRIAN WOODBURY, pursuant to Fla. R. Crim P. 3.190(h), moves to suppress a zip-lock baggie containing suspected cocaine and its contents on the following grounds:
I. The property was illegally seized without a warrant.
II. The facts on which this motion is based are set out below.
1. On September 17, 1996 Alan Hewett of the Ocala Police Department received a complaint from a person claiming that a relative who had a drug problem was possibly lending out her car for drugs. A general description of the relatives car was given.
2. Later on September 17, 1996, Officer Hewett saw a car fitting the description he was given earlier.
3. The car was stopped by Officer Allen and the driver was questioned. *357 During the questioning a K-9 unit arrived and the dog alerted on the car. Officer John Mark Jones then searched the Defendant, and a baggie of suspected cocaine was found on the Defendant's person.
WHEREFORE the Defendant, Adrian Woodbury, asks that this court issue an order suppressing all evidence described in the above Motion.
From reading the motion, it is unclear what theory is being asserted to support the argument that the cocaine was subject to suppression. Importantly, the motion does not contain any assertion that the search of Mr. Woodbury's person was illegal. Furthermore, review of the transcript of the suppression hearing indicates that defense counsel's argument to the trial court also did not address the scope of the search of Mr. Woodbury's person after the dog alerted on the car.
The dissent correctly quotes an excerpt from defense counsel's argument made during the hearing on the motion:
I'm just saying that ... Jumbo ... because they didn't train him correctly, he didn't separate ... teach him how to distinguish marijuana from cocaine or heroine... this particular dog is subjecting the citizens of this county to an arrest up to one year after they buy a used car if there was marijuana smoked in it.
However, this statement was made as a part of defense counsel's argument that the police dog was not properly trained to identify cocaine. The dissent suggests that this statement goes to the issue of whether the search of Mr. Woodbury's person was legal. My reading of the record reveals that this statement was made in the context of Mr. Woodbury's challenge to the qualifications of the dog, not the legality of the search of his person.
In concluding that the issue was preserved for appeal, the dissent also relies on the following question asked by the trial judge during the hearing. "[W]ell, once the dog alerts on the vehicle they have the right to search the vehicle and the passengers, don't they?" I agree that this statement includes an incorrect statement of the law. However, after considering the question in context of the entire proceeding I conclude that the comment did not raise or preserve the issue of the legality of the search of Mr. Woodbury's person. The question was asked during a conversation between the trial court and defense counsel regarding the calling of the K-9 officer as a witness:
PROSECUTOR: I have witnesses, the K-9 officer, to testify about walking the dog, and then the officer who actually searched the Defendant. I'm not sure whether the Defense is contesting that or not.
THE COURT: I mean, Iyeah, I think you're contesting the actual stop of the vehicle. And seems to me like that was you know, certainly, not only had should've stopped it, but he had a duty to stop it through his investigation.
DEFENSE COUNSEL: Judge, I
THE COURT: I don't know ifif heif he had not stopped the vehicle then I think he would've been derelict in his duty.
DEFENSE COUNSEL: Judge, I'm not asking for a decision, but I'm just
THE COURT: I don't think hefrankly, I
DEFENSE COUNSEL: I am contesting the dog search.
THE COURT: Pardon?
PROSECUTOR: Well, he says
THE COURT: Pardon? I didn't hear what he said. I didn't hear what you said.
DEFENSE COUNSEL: That's part of mymy issue is also the dog search.
PROSECUTOR: Well, let me
THE COURT: Well, once the dog alerts on the vehicle they have the right to search the vehicle and the passengers, don't they?
DEFENSE COUNSEL: Well, Judge, I
THE COURT: Well, put him on briefly.
When placed in context, this question by the trial court cannot accurately be characterized as preservation of the issue now raised by Mr. Woodbury on appeal.
Appellate review cannot be obtained regarding a trial court's ruling in a criminal case unless the prejudicial error alleged is *358 properly preserved. § 924.051(3), Fla. Stat. (1997). An issue is preserved if it "was timely raised before, and ruled on by, the trial court, and ... the issue ... was sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds therefor." § 924.051(1)(b), Fla. Stat. (1997). Accordingly, since I conclude that the issue of the legality of the search of Mr. Woodbury's person was not properly preserved, I agree that his judgment and sentence must be affirmed.
HARRIS, J., dissenting.
I respectfully dissent.
While I agree with the majority's well reasoned holding that the stop was legal, I disagree that a canine alert on the exterior of a vehicle, without more, warrants a search of all of the passengers inside. Further, I believe that Woodbury properly raises this issue: "There being no evidence to support a reasonable suspicion that the Appellant, a passenger, was involved in any criminal activity, the State, below, failed to offer a sufficient basis for any detention and/or search of the defendant's person." And this issue, although it could have been worded more clearly, was raised below: "[I'm just saying] that this particular dog is subjecting citizens of this county to a [search] up to one year after they buy a used car if there was marijuana smoked in it." This challenged the right of an officer to search every occupant of a vehicle merely because a dog has alerted to the exterior of a vehicle.
The trial court recognized the issue by asking: "Well, once the dog alerts on the vehicle they have the right to search the vehicle and the passengers, don't they." The judge, although he did not wait for an answer from trial counsel, nevertheless considered this exact issue and, I believe, answered it incorrectly.[1] We should address the issue.
The answer depends on whether a passenger in a vehicle gives up his expectation of privacy by riding in a vehicle that, perhaps unknown to him, carried drugs in the past or is presently carrying drugs or because a fellow passenger may be presently carrying drugs. The canine alert on the vehicle may well raise a founded suspicion of the unlawful use of the vehiclethe use or the transportation of illegal drugs in the vehicle. The exterior alert justifies a search of the vehicle. But even though such alert is probable cause to search the vehicle, it does not justify the warrantless search of all of the individuals therein.
Because of the canine alert, the police were justified in believing that criminal activities might be afoot and justified "a brief stop" of the occupants "in order to determine [their] identities and maintain the status quo momentarily while obtaining more information." See Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The additional information might consist of whether the drugs that alerted the dog were concealed within the vehicle. If not, then more suspicion would be directed to the occupants.
If we replace the vehicle with an apartment and replace the canine alert with a search warrant to justify the search, then we have facts similar to Calhoun v. State, 627 So.2d 60 (Fla. 2d DCA 1993). In Calhoun, a visitor in an apartment suspected of containing drugs and subject to a search warrant was also searched and a cocaine pipe was *359 found. The trial court found that Calhoun was "reasonably connected" to the search premises and refused to suppress the pipe. The Second District reversed holding that there was "no reasonable suspicion that Calhoun was involved in criminal activity."
In our case, the police stopped a vehicle which they believed belonged to one who they had been informed used illegal drugs. A canine alert on the vehicle should not have come as a surprise. The alert did not raise a reasonable suspicion that Woodbury, neither the owner nor the driver of the vehicle, was engaged in criminal activity. There should be some independent basis for searching the occupants of a vehicle, particularly a nonowner or non-driver of the vehicle, detained because of an exterior canine alert. Admittedly, I have found no direct authority on this point (for or against it), but logic suggests its validity.
All drugs concealed on an occupant of a vehicle must necessarily be located within the vehicle. However, even assuming the alert indicates the current, as opposed to past, presence of drugs, all drugs located within the vehicle would not necessarily be concealed on an occupant or any particular occupant. A canine alert on the exterior of the vehicle supports the general proposition that drugs may well be located within the vehicle, but not the more specific proposition that the drugs are concealed on a particular occupant thereof. Here, because of the testimony concerning statements made by the Anderson family, the police were aware at the time of the search that Ms. Anderson probably smoked or carried drugs in her vehicle on a regular basis. It is quite possible, therefore, that the exterior canine alert would not turn up drugs in the vehicle or on the occupants.
If the facts justify it, there can be a constitutional basis for searching the passengers. There appears to be no reason why an independent canine sniff of the occupants themselves could not have been conducted during the vehicle search. The passengers have no expectation of privacy in the air space around them. If their body gives off an odor of illegal narcotics discernable by a trained dog during a period in which the occupants are not illegally detained, this appears to be their bad luck. As stated in U.S. v. Morales-Zamora, 914 F.2d 200, 204-05 (10th Cir. 1990), in discussing two United States Supreme Court decisions:
Together, [United States v.] Jacobsen[, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)] and [United States v.] Place[, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)] make clear that there is no intrusion on legitimate privacy interests (and hence no "search") where the only information revealed [by a canine sniff] is limited to controlled items. See Colyer, 878 F.2d at 474 (Place and Jacobsen stand for the proposition that a possessor of contraband can maintain no legitimate expectation that its presence will not be revealed).
The record before us does not reflect that the vehicle was searched.[2] Indeed, the drugs that alerted the canine may well remain inside the door panel or under the seat of the vehicle. Nor does the record reflect an independent canine alert on the occupants before they were subjected to the search of their person. They were searched only because they were "visitors" in a vehicle suspected of containing drugs. I would reverse.
GRIFFIN, C.J., concurs.
NOTES
[1] It is well recognized that the trial court's ruling on a motion to suppress comes to us clothed with the presumption of correctness. Medina v. State, 466 So.2d 1046 (Fla.1985).
[2] See, e.g., Gliszczynski v. State, 654 So.2d 579 (Fla. 5th DCA 1995).
[1] It has been suggested during consideration of this case that an additional canine sniff inevitably would have discovered the cocaine on the person of Woodbury. The fallacy of this argument is that there was no evidence presented below that it was the established procedure of the police to have a dog alert on individual occupants irrespective of whether drugs were first found in a vehicle. See State v. McLaughlin, 454 So.2d 617 (Fla. 5th DCA 1984). Had the vehicle been searched, based on the dog alert, and drugs had been found therein, that may have supplied probable cause to arrest and search the person of one or more occupants, depending on the location of the drugs in the vehicle. But it would not have automatically authorized the police to arrest and search the persons of all of the occupants absent a further dog alert on the individual occupants. If no drugs had been found in the vehicle, none of the occupants would have been subject to arrest and search absent an individual dog alert on that occupant's person.
[1] If the trial judge recognized the issue, why are we having so much trouble? The concurring opinion has gone to great lengths to show defense counsel's inept presentation of the issue. The important point is that the judge considered the exact issue raised on appeal, even if summarily, and, the concurring judge agrees, arrived at the wrong decision. We will almost certainly see the issue again on a Rule 3.850 motion.

The reason that we require that an issue on appeal be first raised below is not of jurisdictional import. It is merely to give the trial court the opportunity to first consider the issue. When the trial judge has considered the issue, the inept presentation by defense counsel becomes irrelevant. It is akin to harmless error. The judge ruled on the issue by upholding the search of appellant. The judge's ruling is raised on appeal and we should resolve the matter.
Woodbury is serving a sentence based on a wrongful conviction while we argue the style points of his attorney. We, like Nero who fiddled while Rome burned, seem insensitive to the truly important happening going on around us: the trampling of the Fourth Amendment. When the trial judge himself asked the very question now raised on appeal, was he not "fairly apprised" of the issue?
[2] The only testimony related to a search was from officer Hewitt: "I checked thehad Corporal Hewitt check the female driver after the dog alerted on the vehicle. I checked the rear left passenger, and Corporal Jones checked the passengers on the right side." Hence, all passengers were searched immediately upon the canine exterior alert.