HARRIS, J.,
concurring and concurring specially:
Once again the State is urging that appellant should not be heard on appeal because the proper argument was not made below.[1] That is the law of this district. See Jenkins v. State, 747 So.2d 997 (Fla. 5th DCA 1999) (the court would not consider whether an automobile qualifies as a “weapon” under a statute which enhances the penalty if a weapon is “carried” because it was not properly preserved below); see also Woodbury v. State, 730 So.2d 354 (Fla. 5th DCA 1999) (the court would not consider whether a dog alert on the exterior of a vehicle could justify a search of all the occupants therein because the argument was not sufficiently specific below). In both cases cited above, *719 an issue which might have proved the conviction “wrongful” was not considered because the argument below was insufficiently precise. I dissented from both of these opinions with most conventional, even if unpersuasive, dissents. Because I believe that there are absolutely no circumstances under which a court may knowingly ignore a wrongful conviction (unknowingly is bad enough), I have decided to try again, this time expressing my disagreement in terms that might have been employed by the characters in Oliver Twist:[2]
Bumble, upon entering his neighborhood pub, removed his hat and set it on the bar. He recognized the patron sitting next to him.
“Mr. Brownlow, you’re an authority on the law. I’ve just been advised that my nephew in Florida has been convicted of a crime for which he insists he is innocent. Join me in a pint and tell me, if you can, what rights does a man have in Florida if he believes he has been wrongly convicted.”
“Well,” replied Brownlow, “he has the right to appeal, sort of.”
“What do you mean, ‘sort of?”
“The Constitution of Florida provides an appeal as a matter of right from a final judgment, even a judgment of guilt in a criminal matter.”[3]
“So?”
“So the Florida Legislature says that unless the court finds fundamental error, the right to appeal is conditioned on the accused’s attorney preserving the issue by making the precise argument to the trial judge before an appeal can be heard.”[4]
“What is fundamental error?”
“The legislature did not define it and the courts are not always clear.[5] I suppose it is an error that goes to the very foundation of the case and, if uncorrected, will undermine confidence in the trial outcome. Courts usually contrast fundamental error with error that is merely harmful and prejudicial.” [6]
“Why would not any error apparent to the court, if the error may have affected the outcome of the trial, be worthy of the court’s concern? If a wrongful conviction results from any error apparent on the record, whether the court designates it fundamental or merely harmful and prejudicial, is not the confidence in the trial’s outcome undermined? In either event, an innocent man may remain in prison.”
“It is a distinction the courts recognize. In any event, the wrongly convicted may seek post conviction relief, based on ineffective assistance of counsel.[7] Of course, the consequence of his wrongful conviction stands unless and until he is able to prevail on his post-judgment motion.”[8]
*720 “You mean that if the error is not deemed fundamental and if the accused’s lawyer isn’t smart enough to make the right objection or the precise argument at trial, the law of Florida is that the accused’s constitutional right to direct appeal claiming he was wrongly convicted is for naught?”
“Yes, sort of.”
“Here we go again, Mr. Brownlow. What do you mean, ‘sort of?”
“Well, the United States Supreme Court says that the United States Constitution requires that if an indigent’s lawyer believes that the indigent has no basis for an appeal and so advises the court, then the court has the responsibility to review the record and see for itself whether the record properly supports the conviction.”[9]
“What if the court finds an issue which is not considered fundamental and which was not preserved below?”
“Doesn’t matter. The court must look to see if any error is apparent in the record which might have affected the conviction.”
“What about the lack of the proper argument.”
“Immaterial.”
“What is the law of Florida concerning this issue?”
“Florida agrees that it does not matter whether counsel or appellant raised the issue below or on appeal, the court, in considering the appeal of an indigent, must itself examine the record to the extent necessary to discover any errors apparent on the face of the record.”[10]
“You’re telling me that if the accused has a lawyer on appeal, he may be denied a meaningful appeal because of his trial lawyer’s lack of appropriate argument but if he is indigent and handles his own appeal, the court itself must examine the record to see if it can find any error apparent on the face of the record which might overturn his conviction?”
“That’s the law, sort of.”
“Again, what do you mean, ‘sort of?”
“The United States Supreme Court stated that the reason it was imposing this additional responsibility on the courts when unrepresented indigent appellants are involved is so that the indigent will have the same rights on appeal as those appellants who have counsel. This indicates to me that the court intends to give the unrepresented indigent the same right, not a greater right, as those appellants who are represented. Each should be relieved from a wrongful conviction apparent on the face of the record even if the court sees the error with no help from the lawyer. Perhaps Blackstone said it best when he said: ‘It is better that ten guilty persons escape than one innocent suffer.’ ”[11]
*721 “Certainly the presence of competent counsel handling the appeal should make the court’s work easier.”
“Of course it should, and does. In a great majority of cases, counsel will properly preserve the critical issue by making the correct argument. But judges are selected, or should be, based on their knowledge of the law and their unyielding commitment to impartiality.”
“Is that really the reason judges are selected?”
“My views on that will have to await another day, Bumble. And it’ll cost you another pint. The point is that an able judge may well see something in the record that even a skillful counselor might miss. In fact, even a less able judge may sometimes, on his or her own, discover that critical portion of the record which both counsel have overlooked and which makes a travesty of the conviction.”
“Even a blind hog sometimes finds the acorn.”
“That’s one way of expressing it. What I mean, Bumble, is that regardless of how the court learns from the record that a wrongful conviction has occurred, it should grant relief. The court’s primary responsibility, in any appeal, is to the truth. The United States Constitution prohibits one from being deprived of his liberty without due process of law.[12] I submit it is a denial of due process if the appellate court can see from the record that a wrongful conviction has occurred but does nothing about it because some magic words were not uttered below.”[13]
“In other words, even if the accused is represented on appeal and even if counsel has not made the winning argument, still if the court sees on its own than an injustice has occurred, it should exercise the same oversight that it exercises in the case of unrepresented indigents and grant relief.” [14]
“In those very words, Bumble.”
“Does the Florida Constitution contain a similar due process provision? And does it speak to the disparity in treatment between unrepresented indigents and those who are represented in relation to the standard of appellate review?”
“It does both. It has its own due process requirement[15] and, in so far as equality of treatment is concerned, it also provides that all natural persons are equal before the law and have the same right to defend their liberty.”[16]
“Do the courts in Florida protect the represented from an unjust conviction apparent on the face of the record if the proper argument was not made below?”
‘Alas, no, Bumble. Those who are represented must sink or swim with their lawyers.”
“Why has not the right of the represented to equal protection against a wrongful conviction apparent from the record been argued in Florida?”
*722 “Perhaps it’s too revolutionary a concept even for Americans.”
“Is it not important in Florida whether the accused is really guilty?”
“If you mean actual guilt as opposed to legal guilt, then it doesn’t matter at all.”
“But what crime justifies keeping an innocent man in jail if the court can look at the record and see that the accused was wrongly convicted?”
“It’s the crime of having an appellate lawyer.”
“The law supposes that a serious offense, does it?”
“Most serious.”
“I’ve stated before what I consider a law that supposes such.”
“In all its majesty,” said Brownlow, “in all its majesty.”
[[Image here]]
I again thus dissent from the notion that the appellate court lacks the authority to consider the effect of any error apparent on the face of the record which might have resulted in a wrongful conviction even if trial counsel or appellant counsel failed to observe it.
Hugh should be pleased to know that I have accorded him the same appellate right due the unrepresented indigent. I have considered his appeal in light of the unabridged record. He will not be so pleased, I’m sure, that after such review I am convinced from the record that he is most certainly guilty. Admittedly errors are apparent on the face of the record. Perhaps the most glaring is the violation of Hugh’s Miranda rights. As soon as Hugh was arrested in the interrogation room, Miranda warnings should have been given. They were not. Instead, further questions were asked concerning whether Hugh would deny his account of the incident given prior to his arrest. The prosecutor is familiar with Miranda and knows, or should know, that improper evidence should not be offered by the State. Why were not the post-arrest statements redacted by the State? Defense counsel should have raised the issue but did not. It is difficult to see a legitimate trial strategy which would support the introduction of the post-arrest statements. And the trial judge, certainly aware of Miranda, should have observed this obvious violation of Miranda and inquired as to why the statements resulting from the violation should not be excluded. This was clear error but, in my view, harmless under the facts of this case. See Kight v. State, 512 So.2d 922, 926 (Fla.1987) (Miranda violations are subject to harmless error analysis).
The victim’s mother testified that Hugh called her to specifically request that her daughter attend the soccer game so that she could play with Hugh’s daughter who would also be attending while Hugh and the victim’s father were playing soccer. The victim, an eight-year-old girl, testified that when she got to the soccer game and asked the whereabouts of Hugh’s daughter, he would not respond. Instead, while her father was playing soccer, Hugh took her into his van to give her a snack. He closed the van’s doors and, according to the victim, kissed her on the mouth and rubbed his hand on her vagina. Hugh, in his admissible statement made prior to his arrest, admitted that his wife and daughter had left him some time prior to the incident. He admitted giving a “goodnight kiss” to the victim, and admitted that he “probably” touched her inappropriately but suggested that such touching was an accident. However, when pressed by further questioning, Hugh admitted not only that he touched the victim’s vagina but explained how he had done so and admitted doing it more than once. Such explanation negates any chance of an accidental touching.[17] No jury, not even the Simpson *723 jury, based on Hugh’s own admissible testimony would believe that Hugh accidently rubbed the victim’s vagina.
This was not a perfect trial. The law does not require such. Trials must be fair, not perfect. See Lackos v. State, 339 So.2d 217, 219 (Fla.1976). But regardless of the errors, the record convinces me that a wrongful conviction did not occur.
Finally, based on Kitts v. State, 24 Fla. L. Weekly D2144, — So.2d —, 1999 WL 741169 (Fla. 5th DCA Sept.17, 1999), I agree that the addition of the victim injury points for sexual contact was appropriate.

. The issue actually is whether a violation of Miranda without objection but apparent on the face of the record may be considered by the court on direct appeal or must await a ruling on a subsequent Rule 3.850 motion while the defendant, perhaps wrongfully convicted, languishes in prison.

. Charles Dickens, Oliver Twist [1837 — 1838], Particular reference is made to Chapter LI in which Bumble, after being advised by Brown-low that Bumble would lose his parochial office because of the misconduct of his wife since the law supposes that a man's wife acts under his supervision, replied: "if the law supposes that ... the law is a ass — a idiot.”

. Although in doubt for a period of time, this right was reaffirmed in Amend., to Fla. Rules of Appellate Proc., 685 So.2d 773 (Fla.1996).

. Section 924.051, Fla. Slat. (1999). The Florida Supreme Court has held that the legislature may place reasonable conditions upon the constitutional right to an appeal so long as the litigants’ legitimate appellate rights are not thwarted. See Amend, to Fla. Rules of Appellate Proc., 685 So.2d 773 (Fla.1996). Is not a conviction unsupported by the record fundamental error?

. See generally Judge Northcutt’s opinion in Bain v. State, 730 So.2d 296 (Fla. 2d DCA 1999).

. See Jassan v. State, 749 So.2d 511 (Fla. 2d DCA 1999).

. See generally Judge Altenbernd’s dissent in Bain v. State, 730 So.2d 296 (Fla. 2d DCA 1999).

. This raises a policy reason for granting relief. If the court can see from the record that appellant is entitled to relief but defers his or *720 her remedy until after a post-judgment motion, it has provided the damages necessary for a malpractice action against the defense attorney. The “exoneration” required by Steele v. Kehoe, 747 So.2d 931 (Fla.1999), will have been met by the post-judgment ruling. But the damages (continued incarceration) will result every bit as much from the court’s inaction as from the attorney's negligence. By not acting when the error is apparent on the record, the courts are declaring open season on all involved defense attorneys when a defendant prevails on a post-judgment motion relating to ineffective assistance of counsel. By not ruling on the direct appeal, we are assuring an additional criminal proceeding (the 3.850 motion) as well as the inevitable appeal. And if defendant is successful, we are almost certain to see a civil proceeding (malpractice action) with its almost certain appeal. Judicial economy supports my view.

. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

. See State v. Causey, 503 So.2d 321 (Fla.1987). Here, the court specifically rejected the contention that Anders “does not require the appellate court to review the record in search of errors not raised by either appellant or his counsel.”

. Sir William Blackstone, Commentaries [1765 — 1769].

. U.S. Const, art. V.

. The Florida Supreme Court, in another context, discussed the importance of "protecting a citizen’s constitutional right to a fair trial by ensuring that no conviction will be affirmed unless, from a review of the record as a whole, there is no reasonable possibility that the error affected the verdict” in Goodwin v. State, 751 So.2d 537 (Fla.1999).

. This is not really such a radical concept. The Florida Supreme Court has long held that an appellant may raise on direct appeal the ineffectiveness of his counsel if such ineffectiveness appears in the record. See Stewart v. State, 420 So.2d 862 (Fla.1982). Since the new legislative intervention, this may no longer apply if the error alleged to have been made by counsel is not "fundamental.” I merely suggest that this precedent be expanded to permit the appellate court, if it independently finds errors that question the validity of the conviction, to grant relief without concerning itself with the distinction between fundamental and merely harmful error.

. Fla. Const, art. I, § 9.

. Fla. Const, art. 1, § 2.

. Q [The Victim] complained that you rubbed her private part and vaginal area.
A Probably when I hugged her.
*723 Q You think that could have happened when you hugged her, you could have rubbed her vaginal area?
A Yeah,....
* * *
Q ... And tell me how you did your hands to touch her private parts?
A Probably from the bottom. You know. I ... I ... I held her, you know, to give her a hug....
Q ... So, are you telling me that you took your hand under her bottom and touched her private parts like that?
A Yeah, when I hug her.
* * *
Q O.K., so you don't know how many times that you gave [the victim] a hug and your hand might have slipped?
A Maybe a couple of times, you say. I don’t know, but, you say, more than one time. I say, yeah, could be more than one time.
Q So it could have happened, two, three, four times?
A Yeah, could be happen, yeah. So, I don’t want to lie to you. And oh, only one time, you know. But, I tell you the truth is this. I never, you know, put her pants in there or take off her pants or whatever.
Q So it was outside of her pants when you did it?
A Yeah, I'm not an animal, O.K.?