THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JONATHAN L. FONDIA, Defendant-Appellant.

Fourth District   No. 4—99—1050

Argued November 8, 2000.—Opinion filed December 21, 2000.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

Following a stipulated bench trial in November 1999, the trial court found defendant, Jonathan L. Fondia, guilty of possession of drug paraphernalia (a Class A misdemeanor) (720 ILCS 600/3.5(a) (West 1998)). The court later sentenced him to 300 days in jail and ordered him to pay a fine. Defendant appeals, arguing that the court erred by denying his motion to suppress evidence. We agree and reverse.

## I. BACKGROUND

In November 1999, defendant filed a motion to suppress evidence on the ground that the search of his person was illegal in that it violated his fourth amendment right to be protected from unreasonable searches and seizures (U.S. Const., amend. IV). At the hearing on defendant's motion, the trial court received the parties' stipulation to the following facts.

On September 16, 1999, Champaign police officer David Shaffer stopped a vehicle after noticing that its rear taillight was not functioning. Sharon Russell was the driver of the car, Waine Aikens was riding in the front-passenger seat, and defendant was riding in the backseat on the passenger side of the car. Shaffer requested Russell's license and proof of insurance and told Russell the reason for the stop. After Russell provided Shaffer with the requested documents, Champaign police officer Douglas Gallagher arrived on the scene.

Gallagher spoke with defendant and Aikens, and they provided him with their identification at his request. The officers then returned to their squad cars to conduct computer inquiries and warrant checks on Russell, Aikens, and defendant. While running the check on Russell, Shaffer requested that Champaign police officer Douglas Martin and his police canine respond to their location.

Approximately two minutes later, Martin and the police canine arrived. As Martin walked the dog around the vehicle, Russell, Aikens, and defendant remained inside. When the dog reached the rear seam of the driver's door, he alerted to the odor of illegal substances. Martin informed Shaffer of the alert. Shaffer returned to the vehicle and asked Russell to get out of the car and step to the rear. Shaffer explained to Russell that the dog had alerted and that the occupants of the vehicle and the vehicle itself would be searched. He then called in a request for Champaign police officer Elizabeth Mennenga to come to the location to search Russell. Meanwhile, the officers also asked Aikens and defendant to get out of the car, which they did.

Gallagher then informed defendant that the dog had alerted and that Gallagher was going to search him. When defendant responded that he did not want to be searched, Gallagher told him that he did not have the right to refuse. Gallagher then searched defendant's person by placing his hand into defendant's left-front pocket. Gallagher felt a metal tube and removed it from defendant's pocket. Based on his training and experience, Gallagher recognized the tube to be a crack pipe. Gallagher then handcuffed defendant and completed the search. He found no other contraband on defendant. Gallagher performed a field test on the tube he had found in defendant's pocket, and it indicated positive for the presence of cocaine. The other officers searched Russell's purse and Aikens but did not find any contraband.

The parties also stipulated to the following: (1) Shaffer conducted a valid traffic stop; (2) the dog was properly trained and had a highly accurate record; and (3) the canine sniff of the vehicle was valid. On this evidence, defendant argued that the canine alert to the presence of contraband in Russell's vehicle did not give rise to probable cause to search defendant's person.

The trial court ruled that the canine alert gave the officers probable cause to search the vehicle and that "if there is probable cause to believe that there is an illegal item in the vehicle, then the vehicle can be searched, and all of the occupants can be searched." Accordingly, the court denied defendant's motion to suppress the evidence.

The court and parties then immediately proceeded to a stipulated bench trial, which incorporated the previous stipulated facts, and the court found defendant guilty of possession of drug paraphernalia and sentenced him as stated. This appeal followed.

## II. ANALYSIS

Defendant argues that a police canine alert of a car's exterior indicating the presence of a controlled substance within the car does not, without more, provide the police with probable cause to search the persons of the car's occupants. We agree.

■ When the facts are not in dispute, as in this case, we review a trial court's determination on a motion to suppress evidence *de novo*. *People v. Buss*, 187 Ill. 2d 144, 204-05, 718 N.E.2d 1, 35 (1999).

■ Under certain circumstances, an alert by a police canine trained to detect contraband can constitute probable cause for a search of the car. *People v. Easley*, 288 Ill. App. 3d 487, 492, 680 N.E.2d 776, 780 (1997). In determining whether probable cause to conduct a warrantless search exists, a court must look to the totality of the circumstances and make a practical, commonsense decision whether a fair probability existed that an offense was committed and that the defendant committed it. *People v. Pierini*, 278 Ill. App. 3d 974, 979, 664 N.E.2d 140, 144 (1996). The court's consideration is limited to the information available to the officers before the search and should focus on the factual considerations upon which reasonable, prudent people, not legal technicians, act. *Pierini*, 278 Ill. App. 3d at 979, 664 N.E.2d at 144.

The State argues that the canine alert in this case provided the officers with probable cause to search all of the occupants of Russell's car. To support its argument, the State primarily relies on this court's holding in *People v. Boyd*, 298 Ill. App. 3d 1118, 1127, 700 N.E.2d 444, 450 (1998) (as did the trial court), in which we held that an officer's detection of the odor of burning cannabis emanating from a lawfully stopped car provided the officer with probable cause to search the defendant, who was a passenger in the car. However, we deem *Boyd* inapposite.

■ The fourth amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The Supreme Court has spoken of the need to evaluate the search or seizure at issue in a particular case "under traditional standards of reasonableness by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300, 143 L. Ed. 2d 408, 414, 119 S. Ct. 1297, 1300 (1999). Thus, this court must evaluate the reasonableness of the police conduct in this case in light of the totality of the circumstances with which they were confronted when they decided to search defendant's pocket. See

*Pierini*, 278 Ill. App. 3d at 979, 664 N.E.2d at 144; see also *City of Indianapolis v. Edmond*, 531 U.S. 32, 47, 148 L. Ed. 2d 333, 347, 121 S. Ct. 447, 457 (2000) ("reasonableness under the [f]ourth [a]mendment is predominantly an objective inquiry"). For the reasons that follow, we conclude that this search violated the fourth amendment because the officers placed themselves in a position of "willful ignorance" to justify it.

■ The officers here knew that the dog had alerted to the car, thus providing them with probable cause to believe that controlled substances were somewhere either within the car or on the person of one or more of its occupants. After the officers ordered the occupants out of the car, Gallagher told defendant that he was going to search him and then placed his hand into defendant's left-front pocket. Gallagher felt a metal tube and removed it. However, before Gallagher searched defendant's person, he could have—and should have—had the dog sniff defendant to see if the dog would again alert. See *United States v. Place*, 462 U.S. 696, 707, 77 L. Ed. 2d 110, 121, 103 S. Ct. 2637, 2645 (1983) (a canine sniff is not a search for purposes of the fourth amendment).

If a dog sniff of defendant had occurred and the dog alerted, then probable cause would have existed to search defendant's person. If, on the other hand, the dog did not alert after sniffing defendant but did alert as to one of the car's other occupants or as to the now-unoccupied car interior, then no basis would have existed to search defendant's person. By not conducting additional dog sniffs of defendant or the car's other occupants (which the officers had it entirely in their power to do), the officers willfully denied themselves this additional, critical information that would have sharpened their focus on whom to search, leaving themselves in a position of "willful ignorance."

This posture of "willful ignorance" dissipates the reasonableness of the police conduct in this case, given the nature of that conduct, which was a search of defendant's person, not merely a container within the car. In *Houghton*, 526 U.S. at 303, 143 L. Ed. 2d at 417, 119 S. Ct. at 1302, the Supreme Court wrote of the "unique, significantly heightened protection afforded against searches of one's person" and quoted the following from *Terry v. Ohio*, 392 U.S. 1, 24-25, 20 L. Ed. 2d 889, 908, 88 S. Ct. 1868, 1881-82 (1968): " 'Even a limited search of the outer clothing ... constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience.' "

We find support for our conclusion in the dissenting opinion in *Woodbury v. Florida*, 730 So. 2d 354, 359 (Fla. App. 1999) (Harris, J., dissenting), where, in a factually similar case, the dissenting judge wrote the following:

"There should be some independent basis for searching the occupants of a vehicle, particularly a non[ ]owner or non[ ]driver of the vehicle, detained because of an exterior canine alert. Admittedly, I have found no direct authority on this point (for or against it), but logic suggests its validity.

All drugs concealed on an occupant of a vehicle must necessarily be located within the vehicle. However, even assuming the [canine] alert indicates the current, as opposed to past, presence of drugs, all drugs located within the vehicle would not necessarily be concealed on *** any particular occupant. A canine alert on the exterior of the vehicle supports the general proposition that drugs may well be located within the vehicle, but not the more specific proposition that the drugs are concealed on a particular occupant thereof. ***

*** There appears to be no reason why an independent canine sniff of the occupants themselves could not have been conducted during the vehicle search. The passengers have no expectation of privacy in the air space around them. If their body gives off an odor of illegal narcotics discernable by a trained dog during a period in which the occupants are not illegally detained, this appears to be their bad luck." (Emphasis omitted.)

Another way to understand our conclusion is to consider the following hypothetical situation. A pedestrian is struck in the face, knocked down, and robbed on a public sidewalk. The victim notices that his assailant is a young white man wearing a baseball cap and blue jeans, who has a human skull tattoo on the back of his left hand. The victim also sees the assailant run to a nearby car and drive off. The car, which had no other occupants, is dirty gray and bore an Illinois license plate starting with the letters XYZ.

Assume further that the victim reports this offense to the police, and 15 minutes later, an officer pulls over a dirty gray car, bearing an Illinois license plate beginning with the letters XYZ, that is occupied by three young white men, all of whom are wearing baseball caps, blue jeans, and gloves. The officer certainly has probable cause to believe that one of these occupants is the robber and that the victim's wallet might still be located within the vehicle. However, it seems to be self-evident that the police, before deciding to search all three occupants of the car, must first direct each of the occupants to remove his gloves so that the police can see which of the three has the skull tattoo on the back of his left hand. If the police discover that occupant A has the skull tattoo and search him, finding the victim's wallet on his person, then the police would have no further basis to either detain or search the other occupants, B and C. Surely, the fourth amendment will not permit the police to place themselves in a position of "willful ignorance" by not learning which of the three passengers has the

skull tattoo and then claiming that they needed to search the person of each of the three occupants for the robbery victim's wallet.

We emphasize that our holding is limited to the facts of record and turns on the absence of *any* indicia of suspicion particular to defendant. Without more, the search of defendant's person was not justified.

The dissent asserts that the record contains no evidence that a canine sniff of individuals in this case would have been feasible. The dissent also suggests that the dog might have been confused either by body odors or proximity to a human being. We disagree.

At trial, the parties stipulated that the dog was properly trained and had a highly accurate record. In view of that stipulation, no reason exists to believe that the dog would be confused by body odors or proximity to a human being. More particularly, the record is totally devoid of anything that would support such speculation. As the dissent notes, this speculation first arose during the State's oral argument before this court, when the appellate prosecutor offered some musings about dangers that could be caused by a dog's alerting to an individual. However, given that the appellate prosecutor conceded at argument that this record contains no such information, we are surprised to see our dissenting colleague citing the prosecutor's musings.

Last, *Horton v. Goose Creek Independent School District*, 690 F.2d 470 (5th Cir. 1982), cited by the dissent is inapposite. That case involved "exploratory sniffing" by dogs of students in a school setting when no basis existed to focus on the students being sniffed. *Horton*, 690 F.2d at 473-74. In addition, the *Horton* court, which was concerned that the dog in that case touched and scratched at students, specifically declined to address "whether the use of dogs to sniff people in some other manner, *e.g.*, at some distance, is a search." *Horton*, 690 F.2d at 479. Further, it is inconsistent for the dissent to complain about the potential intrusiveness to a person of a dog sniff when the dissent apparently approves of the search of the pockets of that same person. However intrusive a dog sniff might seem, the search of one's pockets, as the Supreme Court explained in *Houghton*, 526 U.S. at 303, 143 L. Ed. 2d at 417, 119 S. Ct. at 1302, is far more intrusive.

In sum, we hold that the trial court erred by denying defendant's motion to suppress the evidence discovered during the search of defendant's person. Because we have concluded that the court should have suppressed the only evidence of defendant's guilt, we reverse defendant's conviction and need not remand for further proceedings.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

GARMAN, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent and would affirm the the judgment of the trial court.

I believe the majority would have allowed the search if defendant had been the only person present in the car. The question in this case is whether, when the police have probable cause to believe that drugs are present and have narrowed their search to three individuals in a car, the police have to let those individuals go because they are not sure which one of them possesses the drugs. The majority avoids answering that question by utilizing its knowledge of narcotics sniffing dogs and concluding that the police officers placed themselves in a position of "willful ignorance" by not conducting a canine sniff of the individuals themselves.

There is no evidence in the record which indicates that a canine sniff of individuals is feasible, and the appellate prosecutor, during oral argument, avowed that it was not, because the dog may be confused by body odors and proximity to a human being. According to the appellate prosecutor, there may be some danger to an individual if the dog alerts on that individual. In any event, I see nothing to be gained by requiring a sniff of an individual before conducting a search of that individual. As opposed to sniffs of property, sniffs of persons are intrusive and are themselves considered to be searches. See *Horton*, 690 F.2d at 479 (dogs physically touching students with their noses is an unreasonable search). Likewise, we should not require a search of the vehicle before a search of the occupants, after the dog has alerted on the vehicle. The fact that the vehicle contains drugs is no indication the occupants do not also have drugs on their persons.

I suggest that the search of the individuals in this case was proper, that just as there was probable cause to believe there were drugs in the car, there was also probable cause to believe the three individuals in the car possessed drugs on their persons. Probable cause is knowledge of facts that justify a reasonably prudent person in believing that evidence of a crime is contained in a certain location. *People v. Jones*, 38 Ill. 2d 427, 433, 231 N.E.2d 580, 584 (1967). Proof beyond a reasonable doubt is not necessary for probable cause.

In *Ybarra v. Illinois*, 444 U.S. 85, 88, 62 L. Ed. 2d 238, 243, 100 S.

Ct. 338, 340-41 (1979), a judge issued a warrant to search a one-room bar for heroin seen behind the bar or on the person of the bartender. The Supreme Court struck down a frisk of the 12 customers present in the bar when the warrant was served. *Ybarra*, 444 U.S. at 91, 62 L. Ed. 2d at 245, 100 S. Ct. at 342. *Ybarra* indicated, however, there might be probable cause to search "where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." *Ybarra*, 441 U.S. at 92 n.4, 62 L. Ed. 2d at 246 n.4, 100 S. Ct. at 343 n.4.

The present case falls within the exception envisioned by *Ybarra*. This car was not a public place like the bar in *Ybarra*. There were only three individuals in this car, and although they were not clearly involved in a present criminal activity (*cf. Boyd*, 298 Ill. App. 3d 1118, 700 N.E.2d 444 (odor of burning cannabis detected in lawfully stopped vehicle)), they were more likely than the bar patrons in *Ybarra* to be connected with the criminal activity. See 2 W. LaFave, Search & Seizure §§ 4.9(c), 4.5(e) (3d ed. 1996).

Finally, I note that defendant raises no issue in this case regarding the use of a canine unit at a traffic stop. *Cf. People v. Ortiz*, 317 Ill. App. 3d 212 (2000).