# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Neuberger*, 2011 IL App (2d) 100379

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACOB A. NEUBERGER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0379 |
| Filed | October 21, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for unlawful possession of cannabis and drug paraphernalia were upheld where the investigative stop of defendant was lawful and a police dog's alert to the vehicle in which defendant was a passenger, standing alone, justified a search of defendant; however, the mittimus was modified to reflect a credit of $5 toward defendant's fine based on his presentence incarceration. |
| Decision Under Review | Appeal from the Circuit Court of Carroll County, Nos. 09-CM-127, 09-CM-128; the Hon. John F. Joyce, Judge, presiding. |
| Judgment | Affirmed as modified. |

Counsel on
Appeal

Thomas A. Lilien and Kim M. DeWitt, both of State Appellate
Defender's Office, of Elgin, for appellant.

Scott L. Brinkmeier, State's Attorney, of Mt. Carroll (Lawrence M. Bauer
and Edward R. Psenicka, both of State's Attorneys Appellate
Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE JORGENSEN delivered the judgment of the
court, with opinion.
Justices Hudson and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1        Following a stipulated bench trial in the circuit court of Carroll County, defendant, Jacob
A. Neuberger, was found guilty of unlawful possession of cannabis (720 ILCS 550/4(a)
(West 2008)) and possession of drug paraphernalia (720 ILCS 600/3.5 (West 2008)). The
trial court placed defendant on court supervision for 12 months for both offenses and
imposed a $750 fine for possession of drug paraphernalia. On appeal, defendant argues that
the trial court erred in denying his motion to quash his arrest and suppress evidence. In the
alternative, defendant argues that, as a result of the time he spent in custody prior to trial, he
is entitled to monetary credit toward his fine. We affirm as modified.

¶ 2        At the hearing on defendant's motion to quash and suppress, Mount Carroll police officer
Dennis Asay testified that just before midnight on July 30, 2009, while on patrol in a marked
squad car, he responded to a report that someone was hiding in the bushes on the north side
of the post office, which is located at the corner of Rapp Street and Clay Street and is "kitty
corner" from the Carroll County courthouse. According to Asay, the information came from
either a dispatcher or a jailer who noticed the subject crouching behind the bushes, which are
located between the post office building and the sidewalk on Rapp Street. Asay was a few
blocks away when he received the report. When he approached the intersection of Rapp
Street and Clay Street, he observed a red automobile pull onto Rapp Street and stop in front
of the north side of the post office. Asay then observed someone come from behind the
bushes, jump over them, run over to the automobile, and get into the backseat. At that point,
Asay activated his vehicle's emergency lights and pulled up behind the automobile. When
Asay approached the automobile, he recognized the individual who had jumped over the
bushes to be Karl Beyer. Danielle Neuschwanger was driving the vehicle, and defendant was
in the front passenger seat. Asay spoke with Neuschwanger and then turned his attention to
Beyer, a youth who was violating curfew. A sheriff's deputy who also responded to the report
took Beyer into custody. Asay then "went back to further investigate the driver." Asay
testified that he detected the odor of an alcoholic beverage on her breath and that her eyes

-2-

were bloodshot. Asay had Neuschwanger exit the vehicle and perform field sobriety tests. He concluded that she was not intoxicated.

¶ 3      While Neuschwanger was performing the field sobriety tests, Michael Holland, a Carroll County sheriff's deputy, arrived at the scene with a drug-detection dog named "Illo." When Neuschwanger completed the tests, she returned to the driver's seat of the vehicle and Asay began to speak with defendant. Holland walked Illo around the vehicle a couple of times. (On cross-examination, Asay indicated that he was unsure whether Holland started to walk the dog around the vehicle before or after Asay finished administering the field sobriety tests to Neuschwanger.) Holland advised Asay that Illo had alerted on the car, indicating the presence of contraband, and Asay then asked defendant to step out of the vehicle. Asay frisked defendant and had him remove his shoes. In one of the shoes, Asay discovered a baggie containing what appeared to Asay to be cannabis. The same shoe also contained a "metal device" that had what appeared to be burnt cannabis in it. Asay then placed defendant under arrest.

¶ 4      Holland testified that, when he arrived at the scene, Asay was administering field sobriety tests to Neuschwanger, and defendant was sitting in the front passenger seat of a red four-door automobile. Neuschwanger sat in the driver's seat while Holland walked Illo around the vehicle. Holland testified that he and Illo started the walk at the rear driver's-side corner of the vehicle. They proceeded counterclockwise behind the vehicle and around to the passenger side. Illo alerted when he reached the handle of the front passenger door. After Asay placed defendant under arrest, Holland searched the automobile. Holland testified that he discovered "contraband" in the vehicle. He did not specify the nature of the contraband or indicate where it was located within the vehicle.

¶ 5      In denying the motion, the trial court reasoned that, after Illo alerted to the automobile defendant had been traveling in, the police had probable cause to search the vehicle and considerations of officer safety justified searching the occupants of the vehicle before searching the vehicle itself.

¶ 6      Under *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer who lacks probable cause for an arrest may nonetheless effect a limited investigatory stop where there exists a reasonable suspicion, based upon specific and articulable facts, that the person detained has committed or is about to commit a crime. *Id.* at 21-22. "[A]lthough reasonable suspicion demands more than a mere hunch [citation], the standard requires only that 'a police officer must be able to point to specific, articulable facts which, when taken together with the rational inferences from those facts, reasonably warrant the intrusion' [citation]." *Village of Lincolnshire v. Kelly*, 389 Ill. App. 3d 881, 887 (2009) (quoting *People v. Schacht*, 233 Ill. App. 3d 271, 275 (1992)). In determining whether reasonable suspicion exists, courts must make commonsense judgments and inferences about human behavior. *People v. Payne*, 393 Ill. App. 3d 175, 180 (2009). Reasonable suspicion may arise from acts that are not crimes in their own right; "the question for the court is the degree of suspicion that attaches to the circumstances surrounding a defendant's actions." *Id.* "Facts that describe a large category of presumably innocent travelers are insufficient to support an investigatory stop." *Id.* On the other hand, it is not necessary to show that the belief that the suspect has committed a crime is more likely true than false. *Kelly*, 389 Ill. App. 3d at 886-87.

¶ 7        Defendant maintains that there was no basis to stop the vehicle in which he was traveling. Defendant acknowledges that he did not contest the stop during the proceedings below. However, he contends that his trial attorney's failure to raise the issue violated his right to the effective assistance of counsel. Under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant claiming a deprivation of the right to the effective assistance of counsel must establish that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. As explained below, the initial stop was lawful, so an argument to the contrary by trial counsel would not have changed the result of the suppression hearing.

¶ 8        Defendant argues that Beyer had done nothing to give rise to a reasonable suspicion that criminal activity was afoot. Defendant argues that it is not unusual for people to be out at midnight during the summer. Nor, according to defendant, "would it be unusual for a person to crouch while on a walk: to tie a shoe, retrieve a dropped object, or recover a hat that has blown off one's head." Defendant points out that a person might also crouch down to look for "a wayward pet, or even a child who has run away in a fit of temper." But Beyer's actions were not characteristic of a law-abiding citizen taking the air. One out for a walk late at night would not ordinarily be found *behind* bushes that separate a government building from the sidewalk. Nor would he or she be expected to jump over those bushes and run to a car. It would be reasonable for one aware of these facts to suspect that a burglary, an act of vandalism, or some other crime might be taking place. That there were plausible innocent explanations for Beyer's conduct does not mean that it was unreasonable to subject him to the limited intrusion of a *Terry* stop to investigate those possibilities. Defendant cites several decisions in which we held that *Terry* stops were unlawful. See *People v. Haywood*, 407 Ill. App. 3d 540 (2011); *People v. Ocampo*, 377 Ill. App. 3d 150 (2007); *People v. Kipfer*, 356 Ill. App. 3d 132 (2005). Suffice it to say that we agree with the State that the facts of those cases bear little resemblance to what transpired here. We therefore conclude that the initial stop was lawful.

¶ 9        We next consider whether a search of defendant's person was permissible. There is no dispute that Illo's alert supplied probable cause to search the vehicle in which defendant had been traveling. See, *e.g.*, *United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007). Probable cause to search a vehicle for contraband does not automatically confer authority to conduct an incidental search of the occupants of the vehicle, even if the contraband in question is the sort that could easily be concealed on one's person. *United States v. Di Re*, 332 U.S. 581, 586-87 (1948). However, in *People v. Stout*, 106 Ill. 2d 77 (1985), our supreme court held that the odor of burning cannabis emanating from a lawfully stopped automobile supplied probable cause to conduct a warrantless search of the driver's person. In *Stout*, the driver was accompanied by two passengers, but the court did not consider whether a warrantless search of the passengers would have been permissible. The Fourth District extended *Stout* to passengers in *People v. Boyd*, 298 Ill. App. 3d 1118, 1127 (1998). The *Boyd* court concluded that there was no logical basis for treating the passengers differently from the driver in such circumstances. The *Boyd* court also noted authority from

other jurisdictions that an officer who detects burning cannabis in an automobile may arrest and search all the occupants. *Id.* at 1127-28.

¶ 10     We see no reason to reach a different result in this case merely because the presence of drugs was detected via canine, rather than human, olfaction. In particular we reject the approach taken by the Fourth District in *People v. Fondia*, 317 Ill. App. 3d 966 (2000), and *People v. Staley*, 334 Ill. App. 3d 358 (2002). *Fondia* held that a drug-sniffing dog's alert to a vehicle does not justify a search of the occupants of the vehicle; rather, those persons must be sniffed individually before they may be searched. The *Fondia* court reasoned, in essence, that when a dog's alert casts collective suspicion on a vehicle's occupants, the police may not abstain from gathering additional available information that might help to confirm or dispel that suspicion as to each occupant individually.[1] *Staley*, as we read it, reaffirmed *Fondia*'s basic analysis, but held that a dog's alert to the vehicle, standing alone, will justify searching the occupants if there is evidence that having the dog sniff the occupants individually would raise valid safety concerns.

¶ 11     We are aware of authority suggesting that the existence of probable cause may depend not only on what information is known to police, but also on whether the police refrained from obtaining additional readily available information. See generally 2 Wayne R. LaFave, Search and Seizure § 3.2(d), at 51-55 (4th ed. 2004). This expansion of the probable cause inquiry might be appropriate in cases involving obvious lapses by police. However, we do not believe that the dog-sniff scenario presented in this case and in *Fondia* and *Staley* fits that description. We note that it is evident from Holland's testimony that his decision to have Illo sniff the vehicle but not the occupants was consistent with his training. We are in no position to determine whether Holland was trained well or poorly in this respect.

¶ 12     Courts may not condone police conduct that runs afoul of the constitution, but we are hesitant to endorse a probable cause analysis that gives courts broad power to declare that specialized investigative techniques are constitutionally mandatory. Moreover, to the extent the probable cause inquiry may properly be expanded to look not only at what information was known to police, but also at what additional information was readily obtainable, we believe that the burden properly rests on the defendant to establish that a particular investigative technique should have been employed. Thus, in our view, the *Fondia* court erred in second-guessing the officer's decision not to have the dog sniff the defendant in that case. Assuming, *arguendo*, that such a decision is reviewable in a suppression hearing, we agree with the *Staley* court that a risk of injury to the suspect justifies the officer's decision. We do not agree, however, with the composite holding of *Fondia* and *Staley*, that the State bears the burden of establishing this justification; if anything, the defendant should bear the burden of showing that a specialized investigative technique should have been employed. We therefore conclude that *Stout* and *Boyd* are controlling. In view of this conclusion, we need not consider whether the search of defendant's person was a permissible protective search

---

[1]We note that the majority in *Fondia* based its decision largely on the dissenting opinion in *Woodbury v. State*, 730 So. 2d 354, 359 (Fla. Dist. Ct. App. 1999) (*en banc*) (Harris, J., dissenting, joined by Griffin, C.J.) (*per curiam*).

for weapons. See *Terry*, 392 U.S. at 27. Nor is it necessary to consider the State's argument that the evidence discovered during the search would be admissible under the inevitable discovery rule. See *Nix v. Williams*, 467 U.S. 431, 448 (1984).

¶ 13 We turn now to defendant's alternative argument that, as a result of the time he spent in pretrial custody, he is entitled to a monetary credit toward his fine. Section 110-14(a) of the Code of Criminal Procedure of 1963 provides:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14(a) (West 2008).

A defendant may apply for the credit for the first time on appeal. *People v. Caballero*, 228 Ill. 2d 79, 88 (2008). The parties are in agreement that defendant was in custody for one day and is entitled to a $5 credit toward his $750 fine.

¶ 14 For the foregoing reasons the mittimus is modified to reflect a credit of $5 toward defendant's $750 fine. In all other respects, the judgment of the circuit court of Carroll County is affirmed.

¶ 15 Affirmed as modified.