THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GREGORY A. BOYD, Defendant-Appellee.

Fourth District No. 4—98—0077

Argued August 18, 1998.—Opinion filed September 18, 1998.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J.

Biderman, and Charles F. Mansfield (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel, for the People.

Brian C. Silverman (argued) and James C. Dedman, both of Silverman & Associates, of Urbana, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In October 1997, the State charged defendant, Gregory A. Boyd, with possession of a substance containing cannabis (more than 2.5 grams but less than 10 grams) and possession of a controlled substance with intent to deliver (1 gram or more but less than 15 grams of a substance containing cocaine) (720 ILCS 550/4(b), 570/401(c)(2) (West 1996)). In November 1997, defendant filed a motion to suppress the evidence that formed the basis for the cocaine charge against him. In January 1998, the trial court conducted a hearing on that motion and granted it. The State appeals, and we reverse and remand with directions.

## I. BACKGROUND

At the January 1998 hearing on defendant's motion to suppress, the parties stipulated to the facts set forth in the police reports, which showed the following. On the evening of October 15, 1997, Champaign police officers Walton and Alvis were on routine patrol when they saw a maroon car fail to completely stop at a stop sign. When the officers tried to catch up with the car, "it accelerated as if the [three] occupants meant to elude" the officers. The car then pulled into a parking lot and stopped. Alvis' report indicated that the car's occupants "immediately attempted to exit the vehicle as it stopped," and he and Walton ordered them to remain in the vehicle. Walton's report indicated as follows:

> "As the vehicle rounded the corner, it hastily pulled into a parking spot. All the occupants immediately jumped out.
>
> As Officer Alvis and [I] approached the vehicle, we advised the occupants to return to the vehicle. From their demeanor, and their nervous mannerisms, I was convinced that they intended to flee on foot."

Walton identified defendant as the backseat passenger.

Both Alvis and Walton approached the car. As Walton came within four feet of the passenger's side of the car, he smelled "the extreme odor of burned cannabis." (The parties stipulated to Walton's training and ability to identify the smells of both fresh and burning cannabis.) As Alvis approached the driver's side, he smelled "a strong odor of burnt cannabis."

Police sergeant Scott Swan and Officer Walker responded to Alvis

and Walton's call for assistance. Walker's report indicated, in relevant part, as follows:

> "As I reached the vehicle, I could smell a very strong odor of cannabis [e]mitting from within the vehicle. As I opened the passenger side back door and asked the passenger [later identified as defendant] to exit[ ] the vehicle, I smelled a stronger odor of cannabis from within the vehicle."

Swan's report indicated that as he approached the car, he "could smell the odor of burnt marijuana."

At Walton's request, Walker asked defendant to get out of the vehicle and began attempting to search him "for any controlled substances." Defendant got out of the car but refused to place his hands on the car so that Walker could search him. Walker placed defendant in handcuffs to complete the search. During the search, Walker "located a small plastic baggie containing a green leafy substance" (subsequently determined to be cannabis) in defendant's right sock. He also located a "plastic baggie" which "contained several other smaller plastic baggies, tied in knots, to secure a[n] off-white in color substance" (subsequently determined to be crack cocaine) in defendant's left sock. (This evidence formed the basis for the cocaine possession charge against defendant.)

While the other officers were searching the occupants, Swan searched the car. He found a "baggie containing suspected cannabis" under the driver's seat. (This evidence was the basis for the cannabis possession charge against defendant; it is not at issue in this appeal.)

After hearing counsel's arguments and considering the evidence, the trial court granted defendant's motion. The court found that (1) when the officers approached the car after lawfully stopping it, the occupants were still in the car; (2) the officers thus had no need to detain the occupants to determine who was driving; and (3) the officers had no officer safety concerns that authorized them to order defendant, who was a passenger, to remain in the car. The court stated, in relevant part, as follows:

> "It's extremely difficult to resolve these factual matters based on [police] reports. They are inconsistent in my estimation, inconsistent in some pretty critical aspects, but I will respect the agreements of the parties and do my best. Now I believe that the law provides this. Number one, the original stop of the vehicle was quite proper and valid. *** With regard to what follows next, there are circumstances under which a police officer who has stopped a vehicle for a traffic violation can order passengers to remain or order passengers to step out, one [of the reasons] is if the officer feels that's necessary for his or her own safety. That's not advanced as a reason here. In fact, there is no specific articulable reason advanced

here to justify whichever happened. According to one police officer's report[, the occupants] were told to stay in the car. According to another [report], they were told to get back in the car, and there is a difference. *** If, in fact, the police arrived at a point where they could clearly identify who the driver was, unless they were for some reason concerned with their own safety, and there is no suggestion that they were, then I believe [defense counsel] is correct; then the passengers had a right to walk away. *** However, if, in fact, all of the occupants of the vehicle had already exited the vehicle so that the police could not tell with certainty who the driver was, then, of course, they have every right under [*Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968),] and the codification of our *** code of criminal procedure to stop them and ascertain who is the driver. *** *Obviously if the occupants are still getting out of the vehicle, it's pretty obvious who the driver was and the rationale for stopping and detaining the two passengers can only be*, as I understand the case law, *officer protection, concern for the safety of the officer. Otherwise, they have the right to walk away.* Unfortunately, it's very difficult to resolve that in these reports because both officers who wrote reports [(Alvis and Walton)] and whose reports are not consistent in that regard had an equal opportunity to observe. They are the two officers who conducted the traffic stop and were on the scene. One of them has the three occupants completely out of the vehicle; the other one has [the occupants] starting to get out and told to stop. *** *[T]he burden is on the State to establish*, under my analysis, *that, in fact, [defendant] and the other occupants were already out [of] the vehicle so the officers had to stop them to determine who was the driver, since, again, officer safety is not advanced as a reason for this. The State has not met its burden."* (Emphasis added.)

The trial court thus determined that because the occupants were not yet outside of the car, the officers had no authority to order defendant to remain in the car or prevent him from walking away from the scene. The court also found that, assuming the occupants were already out of the car when the officers arrived, the officers had authority to detain the occupants and determine who was driving; however, the smell of burning cannabis emanating from the car gave the officers probable cause to search only the car and its driver, but not defendant.

## II. ANALYSIS

The State argues that the trial court erred by granting defendant's motion to suppress. We agree.

■ The trial court's ruling on a motion to suppress is generally entitled to great deference, and this court will not disturb it on review unless we conclude it is against the manifest weight of the evidence.

*People v. Bradley*, 292 Ill. App. 3d 208, 210, 685 N.E.2d 426, 427 (1997). We fully accept the trial court's factual findings in this case; however, we conclude that the court's decision granting the defendant's motion to suppress was erroneous as a matter of law.

In *People v. Ricksy*, 206 Ill. App. 3d 302, 306-07, 564 N.E.2d 256, 259 (1990), this court wrote the following:

> "We suggest the following analytical approach for trial courts to use when deciding motions to suppress evidence. When, as here, the evidence before the court reveals a series of interactions between the police and a person who is being stopped or searched, the court's analysis should be as finely divided as possible to distinguish among the various stages of that interaction."

Following the analytical approach we suggested in *Ricksy*, we conclude that the trial court's factual findings (based on the stipulated evidence presented at the hearing on defendant's motion to suppress) raise the following distinctive questions: (1) Did the police officers lawfully stop the maroon car? (2) Assuming that stop was lawful, did the officers lawfully order defendant (a passenger) to remain in the car—and subsequently to exit the car? (3) Assuming those orders were lawful, did the officer lawfully search defendant? We will analyze these issues in turn.

Initially, we note that defendant concedes that Alvis and Walton's initial stop of the car was valid. He also concedes that the officers could lawfully order defendant to exit the vehicle. See *Maryland v. Wilson*, 519 U.S. 408, 414-15, 137 L. Ed. 2d 41, 48, 117 S. Ct. 882, 886 (1997) (a police officer may, as a matter of course, order passengers of a lawfully stopped vehicle to exit the vehicle).

### A. Did the Officers Lawfully Order Defendant To Remain in the Car?

In *Wilson*, the United States Supreme Court addressed the question of the authority of a police officer who, as here, has lawfully stopped a vehicle to order the passengers to get out of the car. The Court wrote the following:

> "[In *Pennsylvania v. Mimms*, 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977), the Court explained] that '[t]he touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security,"' [citations], and that reasonableness 'depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers,"' [citations]. ***
>
> * * *
>
> We must therefore now decide whether the rule of *Mimms* [in

which the Court held that a police officer may, as a matter of course, order the driver of a lawfully stopped car to exit his vehicle] applies to passengers as well as to drivers. On the public interest side of the balance, the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or a passenger. Regrettably, traffic stops may be dangerous encounters. In 1994 alone, there were 5,762 officer assaults and 11 officers killed during traffic pursuits and stops. [Citation.] In the case of passengers, the danger of the officer's standing in the path of oncoming traffic would not be present except in the case of a passenger in the left rear seat, but the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer.

On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment. It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver.

We think that our opinion in *Michigan v. Summers*, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981), offers guidance by analogy here. There the police had obtained a search warrant for contraband thought to be located in a residence, but when they arrived to execute the warrant they found Summers coming down the front steps. The question in the case depended 'upon a determination whether the officers had the authority to require him to re[ ]enter the house and to remain there while they conducted their search.' [Citation.] In holding as it did, the Court said:

> 'Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.' [Citation.]

In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Wilson*, 519 U.S. at 411-15, 137 L. Ed. 2d at 46-48, 117 S. Ct. at 884-86.

■ Thus, *Wilson* stands for the proposition that a police officer who has made an otherwise lawful stop of a vehicle may—*without more*—order passengers to get out of the car. The situation presented in this case differs only slightly—namely, defendant, a passenger, was ordered to remain in the lawfully stopped vehicle.

On the public interest side of the balance, we conclude that the "same weighty interest in officer safety" is present regardless of whether the officer orders a passenger who is seated in a lawfully stopped vehicle to get out of the car or remain in the car. See *Wilson*, 519 U.S. 408, 137 L. Ed. 2d 41, 117 S. Ct. 882. The officer's concern for his safety is nonetheless heightened by the presence of more than one occupant in the vehicle.

On the personal liberty side of the balance, we conclude that the intrusion on the passenger who is ordered to remain in a lawfully stopped car is no more burdensome—and perhaps less so—than the passenger who is ordered to get out of the car. In particular, we note that the passenger who is ordered to remain in the vehicle will not be exposed to either the elements or the full view of the public. Consistent with the Supreme Court's holding in *Wilson*, we hold that a police officer may lawfully order passengers in a lawfully stopped vehicle to remain in the vehicle. To hold otherwise could lead to anomalous results, and we believe it would be illogical to allow a police officer to order a passenger out of a lawfully stopped vehicle, but not to allow the officer to order such a passenger to remain in the vehicle.

■ In so holding, we note that we do not have before us the question of whether a police officer may forcibly detain a passenger for the entire duration of the traffic stop. Defendant here was not subjected to a lengthy detention based on the lawful stop of the car; instead, defendant was searched and formally arrested once the officers approached the car and smelled burning cannabis (which occurred moments after the officers told defendant to remain in the car). See *Rawlings v. Kentucky*, 448 U.S. 98, 111 & n.6, 65 L. Ed. 2d 633, 645-46 & n.6, 100 S. Ct. 2556, 2564 & n.6 (1980) (a search may be conducted immediately prior to the arrest and need not take place subsequent to it).

Even assuming that defendant and the other occupants of the car had already gotten out of the car and begun to walk away when the officers exited their patrol car, we nonetheless hold—consistent with the Supreme Court's holdings in *Wilson* and *Summers* (*Michigan v. Summers*, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981))—that a police officer may lawfully order passengers who have exited a lawfully stopped vehicle to get back in the car. Such a situation is comparable to the situation presented in *Summers*, in which officers executing a search warrant for narcotics in a residence found the defendant walking down the front steps of the residence. *Summers*, 452 U.S. at 693, 69 L. Ed. 2d at 343-44, 101 S. Ct. at 2589. The Supreme Court held that the officers had authority to require the defendant to reenter the residence and remain there during the search. In so holding, the Supreme Court wrote the following: "The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Summers*, 452 U.S. at 702-03, 69 L. Ed. 2d at 350, 101 S. Ct. at 2594. The same risk of harm and need to exercise "unquestioned command of the situation" are present in a situation in which an officer lawfully stops a vehicle and the occupants immediately get out of the car.

We note that we are not presented with—and therefore do not address—the situation in which a passenger has already walked away from a lawfully stopped vehicle prior to the officer's ordering him to return to the scene. The police reports here indicate—at most—that (1) Walton saw defendant and the other occupants jump out of the car as soon as it stopped and begin walking away; (2) Walton believed the occupants "intended to flee on foot"; and (3) the officers immediately ordered the occupants to get back in the car.

### B. Did the Police Officer Lawfully Search Defendant?

■ Probable cause exists when "facts exist that would lead a reasonable person standing in the shoes of the police officers to conclude that a crime has been committed and the defendant was the person who committed the crime." *People v. Robinson*, 167 Ill. 2d 397, 405, 657 N.E.2d 1020, 1025 (1995). The totality of the circumstances analysis must be based upon both factual and commonsense considerations. *People v. Adams*, 131 Ill. 2d 387, 396-97, 546 N.E.2d 561, 565 (1989).

In *People v. Stout*, 106 Ill. 2d 77, 477 N.E.2d 498 (1985), a police officer testified that he detected the odor of burning cannabis in a vehicle he had just stopped for a traffic violation. Without any further basis, he searched the driver of that car and found a vial of cocaine. On the defendant's motion, the trial court suppressed the cocaine on the ground that the odor of burning cannabis coming from the

defendant's vehicle did not give the arresting officer sufficient probable cause to conduct a warrantless search of the driver. *Stout*, 106 Ill. 2d at 81-82, 477 N.E.2d at 500. The appellate court affirmed the trial court's suppression of the cocaine, but the supreme court reversed and wrote the following:

> "Police officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.
>
> ***
>
> This court has held that *distinctive odors can be persuasive evidence of probable cause. A police officer's detection of controlled substances by their smell has been held to be a permissible method of establishing probable cause.* ***
>
> *** Based on the particular facts of this case, including the officer's experience and training in the detection of controlled substances, we find that probable cause existed to justify the warrantless search." (Emphasis added.) *Stout*, 106 Ill. 2d at 86-87, 477 N.E.2d at 502-03.

In *People v. Strong*, 215 Ill. App. 3d 484, 490, 574 N.E.2d 1271, 1275 (1991), this court held that a police officer's detection of the odor of burning cannabis emanating from a lawfully stopped vehicle provided probable cause to search both the driver and the car. See also *People v. Houldridge*, 117 Ill. App. 3d 1059, 1064, 454 N.E.2d 769, 772 (1983) (where this court held that an officer's detection of the odor of cannabis smoke emanating from a lawfully stopped vehicle provided probable cause for a warrantless search of the car).

■ Consistent with the holdings of *Stout*, *Strong*, and *Houldridge*, we hold that the officers' detection of the odor of burning cannabis emanating from the lawfully stopped maroon car provided the officers with probable cause to search defendant, who was a passenger in the car. To hold otherwise would lead to the illogical conclusion that when a trained police officer detects the odor of a burning controlled substance emanating from a lawfully stopped vehicle he can search only the driver and not the other occupants of the car even though the smell was emanating from the enclosed space of the vehicle in which *all* occupants were present. See *People v. Pittman*, 216 Ill. App. 3d 598, 603, 575 N.E.2d 967, 970 (1991) ("If two or more persons share the immediate and exclusive control or share the intention and the power to exercise control over a thing, then each person has possession").

In support of our holding, we note that other courts have held that a police officer's detection of the odor of burning cannabis emanating from a lawfully stopped vehicle gave the officer probable cause to

search and arrest all occupants of the vehicle for possession of a controlled substance. See *Brunson v. State*, 327 Ark. 567, 572, 940 S.W.2d 440, 442 (1996) (officer's detection of the odor of burning cannabis or its smoke emanating from the vehicle gave the officer reasonable cause to believe that the occupants had been or were committing an offense inside the vehicle); *State v. Hammond*, 24 Wash. App. 596, 600, 603 P.2d 377, 380 (1979) (odor of burning cannabis gave officer probable cause to arrest backseat passenger for possession); see also *State v. Mitchell*, 167 Wis. 2d 672, 684, 482 N.W.2d 364, 368-69 (1992) (officer's detection of burning cannabis and smoke emanating from the vehicle together gave the officer probable cause to believe that the driver, his passenger, or both had been smoking, and thus possessing, cannabis).

## III. CONCLUSION

In closing, we commend the trial court for employing the analytical approach this court suggested in *Ricksy* during the hearing on defendant's motion to suppress, which we found helpful.

For the reasons stated, we reverse the trial court's judgment granting defendant's motion to suppress, and we remand for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

GARMAN, P.J., and COOK, J., concur.