# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Williams, 2013 IL App (4th) 110857**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL R. WILLIAMS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0857 |
| Filed<br>Rehearing denied | June 6, 2013<br>July 15, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The detection of a "strong odor of cannabis" coming from the interior of a car legally stopped for speeding gave the arresting officer the probable cause and exigent circumstances necessary to perform a warrantless search of defendant, a passenger in the car, and defendant's motion to suppress the cannabis discovered in his shoes was properly denied, since defendant's person was the last reasonable place the officer might find the cannabis he smelled after he had searched the driver and the interior of the car, including containers in the car. |
| Decision Under Review | Appeal from the Circuit Court of Woodford County, No. 09-CF-148; the Hon. John B. Huschen, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Karen Munoz, and Michael H. Vonnahmen, all of State Appellate Defender's Office, of Springfield, for appellant. |
| | |
| | Gregory A. Minger, State's Attorney, of Eureka (Patrick Delfino, Robert J. Biderman, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion. |
| | Justices Appleton and Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1      In this case, we are asked to decide whether a police officer's detecting the "strong odor of cannabis" emanating from the interior of a lawfully stopped vehicle provides the police with the probable cause and exigent circumstances necessary to perform a warrantless search of a passenger in that vehicle. We conclude that it does.

¶ 2                                I. BACKGROUND

¶ 3      In December 2009, the State charged defendant, Michael R. Williams, with unlawful possession of cannabis (720 ILCS 550/4(d) (West 2008)). In April 2010, defendant filed a motion to suppress the cannabis that was the basis of that charge.

¶ 4      At a May 2010 hearing on defendant's motion to suppress, the parties stipulated to the facts, which were contained in the arresting officer's December 2009 police report, and argued only whether those facts justified the warrantless search of defendant as a passenger in a lawfully detained vehicle. The following summary of facts was gleaned from that police report.

¶ 5      In December 2009, Illinois State Trooper R. Slayback was running a radar speed gun at a rest stop off Interstate 39 when he measured a Chrysler Aspen traveling 16 miles per hour over the posted speed limit. Slayback initiated a traffic stop and found Olympia R. Cook driving the vehicle, defendant in the front passenger seat, and the couple's two children in the backseat. As Cook lowered the window, Slayback "immediately detected a strong odor of cannabis [emanating] from the vehicle." Upon request, Cook and defendant provided identification and explained that they were traveling to Indianapolis, Indiana, for the holidays.

¶ 6      Slayback asked Cook to exit the vehicle so that he could question her outside defendant's presence. Cook claimed that the vehicle belonged to her cousin and that she was not

responsible for anything inside the vehicle. Two other troopers arrived, and shortly thereafter, Slayback asked defendant to exit the vehicle, which he did. Slayback patted down defendant as a safety precaution. During that patdown, defendant told Slayback that he had approximately $1,200 in cash in his front pocket. Defendant claimed that he was planning to use the money to purchase Christmas presents when he arrived in Indianapolis. Slayback asked defendant to remove his shoes and defendant vehemently refused, positing that Slayback was violating his rights. Slayback thereafter handcuffed defendant and placed him in the backseat of his squad car "for not complying with [his] request."

¶ 7    The other troopers began searching the vehicle, which resulted in the recovery of "six unknown pink pills" and a "stun gun." The troopers thereafter arrested Cook, who, as previously stated, had been driving the vehicle. Slayback then returned to his squad car and removed defendant's shoes. That search revealed 43 grams of cannabis.

¶ 8    On this evidence, defendant argued that Slayback lacked probable cause to search his person based solely on the odor of cannabis emanating from the vehicle. Defendant asserted that Slayback had probable cause to search the vehicle and Cook but lacked probable cause to search him as a passenger. The prosecutor responded that the odor of cannabis provided probable cause to search each person in the vehicle, arguing as follows:

"Now, [defendant] *** takes exception saying, well, a passenger is different from the driver. And I would argue that that's not the case. They're both people. They either–if you have four people in the car and you smell an odor of cannabis coming from the car, it makes no sense that you have permission to search the driver but not the other passengers when the cannabis can be concealed on any one of the four occupants that are within the car."

¶ 9    Following a short recess to consider the facts, arguments, and applicable case law, the trial court denied defendant's motion to suppress, finding that "if the driver can be searched *** because it's his person instead of his thing, being a purse or a container, then I don't see why the police officer with probable cause *** would be prohibited from likewise searching the passenger[–]a passenger could just as easily conceal evidence of the crime as the driver."

¶ 10    Following a June 2010 stipulated bench trial, the trial court convicted defendant of unlawful possession of cannabis (720 ILCS 550/4(d) (West 2008)). The court later sentenced defendant to four years and six months in prison.

¶ 11    This appeal followed.

¶ 12                        II. ANALYSIS

¶ 13    Defendant argues that the trial court erred by denying his motion to suppress because Slayback lacked any legal justification for searching his person. Specifically, defendant contends that the probable cause Slayback possessed to search Cook and her vehicle without a warrant did not apply to him as the passenger. For the reasons that follow, we disagree.

¶ 14                A. The Standard for Reviewing a Motion To Suppress

¶ 15    Typically, we review a trial court's ruling on a motion to suppress evidence under the

two-part test adopted by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). *People v. Absher*, 242 Ill. 2d 77, 82, 950 N.E.2d 659, 663 (2011). Under that standard, factual findings are upheld unless they are against the manifest weight of the evidence. *People v. Hunt*, 2012 IL 111089, ¶ 22, 969 N.E.2d 819. Then, when the reviewing court assesses the established facts in relation to the issues presented and reaches its own conclusions as to what relief, if any, should be allowed, its review is *de novo*. *Id.* Here, the facts are not in dispute, and therefore, our review is simply *de novo*.

¶ 16                              B. The Fourth Amendment

¶ 17     The fourth amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, article I, section 6, of the Illinois Constitution provides that the "people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches [and] seizures." Ill. Const. 1970, art. I, § 6. Article I, section 6, is interpreted in limited lockstep with the fourth amendment. *People v. Caballes*, 221 Ill. 2d 282, 313, 851 N.E.2d 26, 44-45 (2006). Therefore, "[a] search conducted without a search warrant is *per se* unreasonable unless it is a search conducted pursuant to consent, a search incident to arrest, or a search predicated upon probable cause where there are exigent circumstances which make it impracticable to obtain a warrant." (Internal quotation marks omitted.) *People v. Ferral*, 397 Ill. App. 3d 697, 706, 921 N.E.2d 414, 422 (2009).

¶ 18     In this case, Slayback did not obtain a warrant to search defendant, the search was not incident to arrest, and defendant did not consent to be searched. Thus, Slayback's search of defendant had to be predicated upon probable cause where exigent circumstances existed that made it impracticable for Slayback to obtain a warrant.

¶ 19     The fourth amendment has long been interpreted to allow probable-cause-based warrantless searches of a vehicle that is stopped on the apron of a highway, given the exigency of that situation. See *Coolidge v. New Hampshire*, 403 U.S. 443, 460 (1971) (" 'exigent circumstances' justify the warrantless search of 'an automobile stopped on the highway,' *** because the car is 'movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.' '[T]he opportunity to search is fleeting ....' " (Emphasis omitted.)). Thus, the only issue to be resolved in this case is whether the odor of cannabis emanating from the interior of Cook's vehicle provided Slayback probable cause to search defendant. Because defendant was a passenger in the vehicle, and probable cause to search a vehicle does not necessarily include passengers (see *United States v. Di Re*, 332 U.S. 581, 587 (1948) (a passenger's "mere presence" in a suspected vehicle does not necessarily deprive the passenger of the immunities from the search of his person)), a close examination of the probable-cause-to-search standard and the case law related to vehicle and occupant searches is warranted.

¶ 20                              C. Probable Cause Generally

¶ 21     The Supreme Court of the United States recently reiterated the probable-cause-to-search

-4-

standard, as follows:

> "A police officer has probable cause to conduct a search when 'the facts available to [him] would "warrant a [person] of reasonable caution in the belief" ' that contraband or evidence of a crime is present. [Citations.] The test for probable cause is not reducible to 'precise definition or quantification.' [Citation.] 'Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the [probable-cause] decision.' [Citation.] All we have required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.' [Citation.]" *Florida v. Harris*, 568 U.S. \_\_\_, \_\_\_, 133 S. Ct. 1050, 1055 (2013).

The Supreme Court added that probable cause is a "fluid concept" that turns on "the assessment of probabilities in particular factual contexts." (Internal quotation marks omitted.) *Harris*, 568 U.S. at \_\_\_, 133 S. Ct. at 1056. With this standard in mind, we turn to a brief history of cases involving a search of vehicles and vehicle occupants.

¶ 22                    D. A Brief History of Probable Cause To Search
                              a Vehicle and Vehicle Occupants

¶ 23    We begin in 1948 with the Supreme Court's decision in *Di Re*. In that case, the defendant, a passenger in a lawfully stopped vehicle, argued that the probable cause to search the vehicle did not confer an incidental right on law enforcement to search him. *Di Re*, 332 U.S. at 587.

¶ 24    "Reed," a police informant, had confessed to law enforcement that he was going to buy counterfeit gasoline rations from a man named Buttitta at a particular location in Buffalo, New York. *Di Re*, 332 U.S. at 583. Police trailed Buttitta's vehicle until it parked at the location Reed had provided them. *Id.* Officers approached the vehicle and found Reed in the backseat, holding two gasoline rations in his hand. *Id.* Reed told the officers that he received the coupons from Buttitta, who was sitting in the driver's seat of the vehicle. *Id.* Di Re was in the front passenger seat next to Buttitta. *Id.* All three men were taken into custody and later searched. *Id.* The search of Di Re revealed 100 counterfeit gasoline rations in an envelope concealed between his shirt and underwear, and he argued that the probable cause to search a vehicle did not confer an incidental right on law enforcement to search a passenger. *Id.* at 587.

¶ 25    In concluding that the search of Di Re was unconstitutional, the Supreme Court held that probable cause to search a vehicle did not *automatically* confer upon law enforcement the probable cause required to search passengers in that vehicle. *Di Re*, 332 U.S. at 587. In so holding, the Supreme Court noted as follows: "We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *Id.* Reed never implicated Di Re, and nothing, other than his presence in the vehicle, gave law enforcement any reason to believe that he was committing or had committed a crime. *Id.* at 592 ("It is admitted that at the time of the arrest the officers had no information implicating Di Re and no information pointing to possession of any coupons, unless his presence in the car warranted that inference.").

¶ 26    Nearly four decades later, the Supreme Court of Illinois considered whether "the

detection of the odor of cannabis emanating from [a] defendant's vehicle gave the officer probable cause to search" his vehicle. *People v. Stout*, 106 Ill. 2d 77, 83, 477 N.E.2d 498, 500 (1985). The supreme court said that it did, as long as the police officer who detects the odor of cannabis is trained and experienced in such detection. *Id.* at 87, 477 N.E.2d at 502-03. The supreme court also emphasized that probable cause to search a vehicle is governed by a totality-of-circumstances analysis. *Id.* The supreme court concluded its holding, as follows:

> "In the case at bar, it was the duty of [law enforcement], when confronted with circumstances which tended to indicate that criminal activity was taking place, to investigate in order to determine whether such criminal activity in fact existed. Based on the particular facts of this case, including the officer's experience and training in the detection of controlled substances, we find that probable cause existed to justify the warrantless search." *Id.*

¶ 27 Thirteen years later, this court was asked to determine whether a police officer's detection of the odor of burning cannabis emanating from a lawfully stopped vehicle provided the officer with probable cause to search a passenger in the vehicle. *People v. Boyd*, 298 Ill. App. 3d 1118, 1127, 700 N.E.2d 444, 450 (1998). This court held that it did, noting that the opposite result would be absurd, given that possession of a substance may be shared:

> "To hold otherwise would lead to the illogical conclusion that when a trained police officer detects the odor of a burning controlled substance emanating from a lawfully stopped vehicle he can search only the driver and not the other occupants of the car even though the smell was emanating from the enclosed space of the vehicle in which *all* occupants were present." (Emphasis in original.) *Id.*

¶ 28 In 1999, the Supreme Court of the United States revisited *Di Re* as part of its holding in *Wyoming v. Houghton*, 526 U.S. 295, 303 (1999). In *Houghton*, the Supreme Court held that a warrantless search of a passenger's purse did not run afoul of the fourth amendment. *Id.* at 307. Following a routine traffic stop, the officer noticed a hypodermic syringe in the driver's pocket, which the driver admitted he used to "take drugs." *Id.* at 298. Writing for the majority, Justice Scalia explained that a search of a passenger's purse was permissible because it was an item located "in" the vehicle and the officer had probable cause to search for contraband "in" the vehicle. *Id.* at 302. Justice Scalia distinguished Houghton's situation from that of Di Re in that the search of Houghton's purse was not the same as searching her person, recognizing the "heightened protection afforded against searches of one's person." *Id.* at 303. In short, the Supreme Court in *Houghton* held that when police officers have probable cause to search a vehicle, they may "inspect [the] passengers' belongings found in the car that are capable of concealing the object of the search." *Id.* at 307.

¶ 29 Having outlined a brief history of cases involving a search of vehicles and vehicle occupants, we turn to the search of defendant in this case.

¶ 30                        E. The Search of Defendant in This Case

¶ 31 As we stated at the beginning of this opinion, the question before us is whether a police officer's detecting the "strong odor of cannabis" emanating from the interior of a lawfully

stopped vehicle provides the police with the probable cause and exigent circumstances necessary to perform a warrantless search of a passenger in that vehicle. (We note that defendant has never questioned whether Slayback was qualified to detect such an odor; thus, we assume for purposes of this case that he was sufficiently trained and experienced in such detection.)

¶ 32    Although not as numerous as cases involving probable cause based upon an individual's sense of sight, cases involving probable cause based upon an individual's sense of smell can be of the "most persuasive character" (*Johnson v. United States*, 333 U.S. 10, 13 (1948)), particularly in cases involving cannabis. "This, of course, is because there are some truly distinctive odors, while many objects commonly associated with the possession and use of illegal substances (e.g., a green plant, a grassy substance, a handrolled cigarette, pills, a pipe, a folded dollar bill, a plastic baggie, or a glassine envelope) may in fact be innocent." 2 Wayne R. LaFave, Search and Seizure § 3.6(b), at 388 (5th ed. 2012).

¶ 33    Recall that in *Di Re*, the Supreme Court held that the search of the passenger, Di Re, was impermissible because nothing, except the fact that Di Re was in the vehicle, implicated him at all in any criminal activity. Thus, the search of Di Re's person was not supported by probable cause. Similarly, the passenger in *Houghton* could not be searched–although her purse could be as part of the overall vehicle search–because nothing, except that she was in the vehicle, implicated her at all in any criminal activity. Indeed, the specific probable cause to search the driver arose from the officer's having noticed a hypodermic syringe in the *driver's* pocket.

¶ 34    This case differs from *Di Re* and *Houghton*. Here, the "strong odor of cannabis" emanating from the driver's side window provided Slayback probable cause to search defendant because, unlike the gasoline rations in *Di Re* and the hypodermic syringe in *Houghton*, the odor–that is, the thing that gave the officer probable cause–included defendant as a front-seat passenger in that vehicle. See *Harris*, 568 U.S. at ___, 133 S. Ct. at 1055 ("A police officer has probable cause to conduct a search when 'the facts available to [him] would "warrant a [person] of reasonable caution in the belief" ' that contraband or evidence of a crime is present."); see also *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004) ("if an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana"). Thus, this is not a case, like *Di Re*, where the police "had no information implicating" defendant (see *Di Re*, 332 U.S. at 592). The "strong odor of cannabis" that Slayback detected coming from the interior of the vehicle in which defendant was a passenger was sufficient to implicate defendant. Indeed, when Slayback detected the odor of cannabis, he first searched Cook (the driver) and the interior of the vehicle, including containers inside the vehicle. Having eliminated those potential sources for the smell, Slayback's probable cause to search defendant heightened, given that defendant's person was left as the last reasonable place to find the cannabis Slayback smelled.

¶ 35                                    III. CONCLUSION

¶ 36        For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we
award the State its $50 statutory assessment against defendant as costs.

¶ 37        Affirmed.