2016 IL App (4th) 140469

**FILED**
June 8, 2016
Carla Bender
4th District Appellate
Court, IL

NO. 4-14-0469

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| DEJERMAINE J. PETTIS, | ) | No. 13CF1280 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Harry E. Clem, |
| | ) | Judge Presiding. |

JUSTICE POPE delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1 On April 16, 2014, defendant, Dejermaine J. Pettis, was convicted of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(d) (West 2012)) after a stipulated bench trial. Defendant appeals, arguing the trial court erred by denying his motion to suppress evidence. We affirm.

¶ 2                    I. BACKGROUND

¶ 3 On August 6, 2013, the State charged defendant by information with one count of unlawful possession with intent to deliver a controlled substance, a Class 2 felony (720 ILCS 570/401(d) (West 2012)). In October 2013, defendant filed a motion to suppress evidence discovered during a traffic stop on August 5, 2013. On February 6, 2014, defendant filed an amended motion to suppress.

¶ 4        On February 7, 2014, the trial court held a hearing on defendant's motion to suppress. Champaign police officer Jordan Hagemann testified he was part of a two-man patrol unit with Officer Chris Aikman on the date at issue. According to Hagemann, the car in which defendant was a passenger pulled out in front of the officers' vehicle. The officers ran the vehicle's license plate and discovered it was suspended for a mandatory insurance violation. The vehicle turned into the Country Fair Shopping Center, and the officers initiated a stop. Defendant was sitting in the rear passenger side of the car, Steven Johnson was driving, and Ashley Johnson was in the front passenger seat.

¶ 5        Officer Hagemann took the driver's information, returned to the patrol, and discovered Steven's driver's license had been revoked. The officers also ran a check on both passengers, which came back negative for outstanding warrants.

¶ 6        Because the driver was stuttering and mumbling while talking, fumbling with his wallet, visibly shaking, and had a recent drug charge, Officer Hagemann asked a police officer with a police dog to come to the scene. While Hagemann was working on his traffic citations for the driver, the police dog arrived and did an open air search of the vehicle with the passengers, including defendant, inside.

¶ 7        The police dog provided a positive alert, indicating the presence of a controlled substance. The officers then took defendant out of the car for a pat-down weapon search. Defendant consented to a search of his person. Based on defendant's consent, Hagemann searched defendant and did not find any contraband or weapons. Hagemann stated he did not consider defendant armed and dangerous at that time. However, Hagemann testified defendant was handcuffed because the drug dog alerted on the vehicle. Defendant was placed in the backseat of one of the police vehicles.

¶ 8	The police then removed Steven Johnson from the vehicle. Steven was handcuffed, placed under arrest, and searched before being placed in the back of a police vehicle. The officers did not find any contraband on Steven. The police then removed Ashley Johnson from the vehicle. A female officer searched Ashley, handcuffed her, and placed her in the back of a squad car. Once again, no contraband was found on her.

¶ 9	The police officers then searched the vehicle. They found a coat, several needles, a burnt spoon, lighters, and other things of that nature. The coat was in the front passenger seat. Some of the needles were located in the trunk and some were underneath the front passenger seat.

¶ 10	After the vehicle was searched, Hagemann testified defendant was removed from the police car and searched again by Officer Aikman because of a statement by the driver that defendant had concealed something in his buttocks. Once again, no weapons or contraband were found. Defendant was then kept outside the vehicle. Hagemann also testified the female passenger told another officer defendant had concealed something in his buttocks. Defendant was then searched again.

¶ 11	During this third search, Officer Aikman lowered defendant's pants, but not the shorts he had under the pants, for the search. Hagemann testified Aikman said he felt the "knot of a [Baggie]" between defendant's buttocks. Aikman was able to retrieve the object. The police dog never sniffed defendant. The Champaign police department's policy did not allow the police dog to smell suspects.

¶ 12	On cross-examination by the State, Officer Hagemann testified defendant never withdrew or revoked his consent for the officers to search his person. According to Hagemann, prior to the second and third searches, Ashley and Steven both stated defendant had concealed

something in his buttocks. Steven told Hagemann defendant had "his hand up his ass." Ashley told an officer defendant had asked her if the police dog would be able to smell whatever he placed between his buttocks. According to Hagemann's testimony, the needles and the burnt spoon found in the suspect vehicle were indicative of drug use.

¶ 13    Officer Aikman testified he and Officer Hagemann pulled over the suspect vehicle around 6 p.m. Aikman approached the passenger side of the vehicle and spoke with Ashley Johnson and defendant, obtaining their names and dates of birth. He did not speak with the driver. He returned to the squad car and found neither Ashley nor defendant had any outstanding warrants. He testified the driver had a prior drug offense. The officers called for another officer with a police dog to come to the scene and conduct an open air search of the vehicle. The police dog provided a positive alert on the vehicle.

¶ 14    The officers then removed defendant from the vehicle. The officers asked defendant if they could pat him down for weapons. Defendant told the officers they could search him, which the officers did. The officers found no contraband on defendant. Aikman testified he did not think defendant was armed and dangerous at that time.

¶ 15    The officers then removed the driver from the vehicle. According to Aikman, defendant was not handcuffed at that point and was standing in front of the squad car. The officers arrested Steven Johnson for driving with a revoked driver's license. The officers searched Steven and secured him in a squad car. The officers then removed Ashley Johnson from the vehicle. Aikman testified he spoke with Ashley while Hagemann searched the vehicle.

¶ 16    Ashley told Aikman she observed defendant concealing something in his buttocks when the traffic stop was initiated. Defendant also asked Ashley and Steven whether they thought the police dog would be able to smell the item he was concealing. Aikman testified he

then searched defendant. Aikman did not find any weapons or contraband on defendant. This was Aikman's first search of defendant.

¶ 17    Aikman testified Hagemann then found contraband in the vehicle during his search, including hypodermic needles and a burnt spoon. No one claimed ownership of these items. Ashley Johnson was the registered owner of the vehicle.

¶ 18    After learning Hagemann found the contraband in the vehicle, Aikman searched defendant a third time. This time he pulled defendant's jeans down below his knees. Defendant had on gym shorts under his jeans. Officer Aikman checked defendant's buttocks area. Aikman testified he "bladed his hand and slid it," presumably between defendant's buttocks. Aikman testified he felt the knot of a Baggie as he slid his bladed hand between defendant's buttocks. Officer Aikman then secured the knot of the Baggie with his fingertips over defendant's shorts. He was able to loosen the Baggie, and it fell down defendant's pant leg.

¶ 19    After defendant rested, the State presented no evidence.

¶ 20    On March 12, 2014, the trial court issued an order denying defendant's amended motion to suppress. On April 16, 2014, the court held a stipulated bench trial. Based on the evidence presented at the hearing on the motion to suppress, the court found defendant guilty of unlawful possession with intent to deliver. On May 28, 2014, the trial court sentenced defendant to 48 months' probation.

¶ 21    This appeal followed.

¶ 22                            II. ANALYSIS

¶ 23    When we review a ruling on a motion to suppress evidence, we apply the two-part standard of review adopted by the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). *People v. Harris*, 228 Ill. 2d 222, 230, 886 N.E.2d 947, 953 (2008). According to our

supreme court, a trial court's findings of historical facts may only be rejected by the reviewing court if they are against the manifest weight of the evidence. *Id.* at 230, 886 N.E.2d at 953-54. However, we can assess the established facts in relation to the issues and make our own determination as to what relief, if any, should be granted. *Id.* at 230, 886 N.E.2d at 954. As a result, we review the trial court's ultimate decision whether to grant or deny a suppression motion *de novo*. *Id.*

¶ 24 In reviewing a trial court's decision on a motion to suppress, it is important to remember the proper burden of proof on suppression issues before the trial court. Our supreme court has stated:

> "The defendant bears the burden of proof at a hearing on a motion
> to suppress. [Citations.] A defendant must make a *prima facie*
> case that the evidence was obtained by an illegal search or seizure.
> [Citation.] If a defendant makes a *prima facie* case, the State has
> the burden of going forward with evidence to counter the
> defendant's *prima facie* case. [Citation.] However, the ultimate
> burden of proof remains with the defendant." *People v. Gipson*,
> 203 Ill. 2d 298, 306-07, 786 N.E.2d 540, 545 (2003).

¶ 25 An appellant forfeits any arguments he failed to make in the trial court. According to our supreme court, by failing to raise arguments in the trial court, a defendant deprives the State of the opportunity to challenge the arguments with evidence of its own. *People v. Hughes*, 2015 IL 117242, ¶ 46. Failing to make arguments in the trial court also deprives a trial court of the opportunity to decide the issue based on that argument. Further, the

- 6 -

failure to make an argument deprives the appellate court of an adequate record related to the argument. *Id*.

¶ 26                              A.  Scope of Defendant's Detention and Search

¶ 27            Defendant concedes the initial stop of the vehicle was lawful.  In addition, defendant makes no argument the police violated his rights by asking for his identification.  However, according to defendant, after the officers determined he had no outstanding warrants or criminal history, defendant should have been free to leave because the police officers did not have any reasonable suspicion defendant was engaged in or about to engage in criminal behavior.  However, defendant did not make this argument in his motions to suppress or in his oral argument to the trial court at the suppression hearing.  Instead, defendant's motions focused on the police officers' actions after the officers completed defendant's consensual search.  As a result, pursuant to *Hughes*, defendant has forfeited any argument he should have been released prior to the completion of his consensual search.

¶ 28            Defendant also argues he was illegally detained after he was searched two times without the police finding any contraband on his person.  According to defendant, after he was searched twice, any reasonable suspicion he was engaged in criminal wrongdoing should have dissipated, and defendant should have been free to leave.  The record does establish defendant was not free to leave after the police dog alerted on the vehicle.  However, defendant provides no argument why the police officers were required to release defendant simply because they found no contraband on his person during the first two searches.  After all, the police dog made a positive alert on the vehicle with defendant inside.

¶ 29            After the dog's positive alert, defendant could be detained for a reasonable amount of time while the police conducted their drug investigation.  Police officers may extend a traffic

stop without violating an occupant's constitutional rights as long as the extension is based on evidence leading to a reasonable suspicion of other criminal activity discovered before the original mission of the stop is completed. *Rodriguez v. United States*, 575 U.S. ___, ___, 135 S. Ct. 1609, 1614-16 (2015). In this case, the State presented sufficient information to show the continued detention in this case was appropriate based on evidence discovered during the mission of the original stop. The evidence in question was the police dog's positive alert on the suspect vehicle with defendant inside.

¶ 30        A dog sniff conducted during a lawful traffic stop does not violate the fourth amendment as long as it is done within the time reasonably required to complete the mission of the initial traffic stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Defendant does not argue the police dog's open air search was not done within the time reasonably required to complete the purpose of the stop in this case.

¶ 31        In addition, defendant's initial consensual search did not dissipate the reasonable suspicion defendant was engaged in criminal activity. While the police did not believe defendant had the drugs on his person after that search, the officers had reasonable suspicion contraband was in the vehicle or in the possession of Steven or Ashley Johnson. The police did not violate defendant's rights by continuing to detain him after this consensual search until they could search the vehicle.

¶ 32        After the officers conducted the consensual search, they searched Steven and Ashley, who were also in the car when the police dog provided the positive alert. The officers found no contraband on either Steven or Ashley. According to Officer Aikman's testimony, Ashley told Aikman defendant concealed something in his buttocks and asked her and Steven if

the police dog would be able to smell the concealed item. According to Aikman, at that point, he personally searched defendant for the first time. This was defendant's second search.

¶ 33    A police officer may search a suspect without a warrant if probable cause is present and exigent circumstances make it impracticable to obtain a warrant. *People v. Williams*, 2013 IL App (4th) 110857, ¶ 17, 990 N.E.2d 916. This court recently noted, "probable cause is a 'fluid concept' that turns on 'the assessment of probabilities in particular factual contexts.' " *Id.* ¶ 21 (quoting *Florida v. Harris*, 568 U.S. ____, _____, 133 S. Ct. 1050, 1056 (2013)). In *Harris*, the Supreme Court stated:

> "A police officer has probable cause to conduct a search when 'the facts available to [him] would "warrant a [person] of reasonable caution in the belief" ' that contraband or evidence of a crime is present. [Citations.] The test for probable cause is not reducible to 'precise definition or quantification.' [Citation.] 'Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence … have no place in the [probable-cause] decision.' [Citation.] All we have required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.' [Citation.]" *Harris*, 568 U.S. at ___, 133 S. Ct. at 1055.

¶ 34    In 2000, this court held "that a police canine alert of a car's exterior indicating the presence of a controlled substance within the car does not, without more, provide the police with probable cause to search the persons of the car's occupants." *People v. Fondia*, 317 Ill. App. 3d 966, 969, 740 N.E.2d 839, 841 (2000). However, this court stressed its "holding is limited to the

facts of record and turns on the absence of *any* indicia of suspicion particular to defendant. Without more, the search of defendant's person was not justified." (Emphasis in original.) *Id*. at 972, 740 N.E.2d at 844. The instant case is distinguishable from *Fondia* because the searches in this case were not based simply on the police canine's positive alert. The other individuals in the vehicle made statements regarding defendant hiding something between his buttocks or in his anus. Steven told an officer defendant had "his hand up his ass." Further, Ashley told an officer defendant had concealed something in his buttocks and had asked her if the police dog would be able to smell whatever he placed between his buttocks.

¶ 35       Since this court's decision in *Fondia*, the Second District specifically rejected this court's approach. *People v. Neuberger*, 2011 IL App (2d) 100379, ¶ 10, 959 N.E.2d 195. The Second District held a police dog's positive alert on a vehicle may provide the police with probable cause to search the vehicle and a passenger in the vehicle. *Id.* ¶¶ 9-10. In addition, this court has stated the smell of cannabis in a vehicle by a police officer can justify the search of a passenger in that vehicle. *Williams*, 2013 IL App (4th) 110857, ¶ 34, 990 N.E.2d 916. Because the facts in this case are distinguishable from *Fondia*, we need not determine whether this court's holding in *Fondia* is still good law.

¶ 36       The second search, which was performed by Officer Aikman, was proper. Aikman clearly had probable cause justifying the search based on the police dog's positive alert on the vehicle with defendant inside and Ashley's statement defendant had concealed something in his buttocks.

¶ 37       The third search of defendant, which also was performed by Officer Aikman, was also proper. In addition to the information justifying the second search, the police officers found contraband indicative of drug use in the car, some of which was within reach of where defendant

was sitting in the vehicle. Further, Steven Johnson, like Ashley Johnson, told the officers defendant had concealed something between his buttocks. As a result, neither of these searches violated defendant's constitutional rights.

¶ 38                                    B. *De Facto* Arrest

¶ 39          Defendant makes an alternative argument the police officers violated his fourth amendment rights when the officers "without probable cause, handcuffed and *de facto* arrested [defendant] during a traffic stop." Defendant argues the investigatory *Terry* stop (*Terry v. Ohio*, 392 U.S. 1 (1968)) ended and a *de facto* arrest occurred when the police officers handcuffed defendant and placed him in a squad car. Quoting *People v. Melock*, 149 Ill. 2d 423, 436, 599 N.E.2d 941, 946 (1992), defendant argues, "a person has been arrested when 'his freedom of movement has been restrained by means of physical force or a show of authority.' " According to defendant, because the police officers had no reasonable grounds or probable cause to believe defendant was committing or had committed a crime, defendant's arrest was unlawful and the evidence found after his arrest should have been suppressed.

¶ 40          However, defendant forfeited this argument pursuant to *Hughes*, 2015 IL 117242, ¶ 46. Defendant did not make this argument in the trial court. In fact, defendant made the opposite argument below, *i.e.*, defendant had not been arrested when he was searched for the third time. Because defendant forfeited this issue, we need not discuss it further. Had defendant made this argument in the trial court, the State likely would have presented additional evidence showing why the officers felt it was necessary to handcuff defendant.

¶ 41                                    C.  Scope of Search

¶ 42          Defendant next argues Officer Aikman exceeded the scope of defendant's consent to search when he searched defendant two times after the consensual search and when Aikman

bladed his hand and put it between defendant's buttocks during the third search. The parties agree the initial search in this case was consensual. However, defendant argues in his brief:

> "Because a reasonable person would not have understood [defendant] to have consented to a second or third search nor would he have been expected to have consented to a bladed hand being inserted between his buttock cheeks, the officers exceeded the consent given by [defendant]. The search, therefore, was subject to Fourth Amendment protections and required that the officers had probable cause to search. Additionally, any evidence that the officers collected as a result of this unconstitutional search is inadmissible and should have been suppressed. [Citation.] Therefore the trial court erred when it denied [defendant's] motion to suppress. This court should reverse the trial court's ruling and remand this case for a new trial."

The problem with defendant's argument is the court did not find the second and third searches were consensual. Instead, the court found the searches were reasonable based on the police dog's alert and the other information available to the officers.

¶ 43 Because we have already found the police officers had probable cause to conduct the second and third searches of defendant, we need not address defendant's argument any further.

¶ 44 III. CONCLUSION

¶ 45        For the reasons stated, we affirm the trial court's denial of defendant's amended motion to suppress.  As part of our judgment, we award the State it's $75 statutory assessment against defendant as costs of this appeal.

¶ 46        Affirmed.